IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES FIRE INSURANCE CO., et al.,

        Plaintiffs,

v.                                    Case No. 05-2192-JWL-DJW

BUNGE NORTH AMERICA, INC., et al.,

        Defendants.

**MEMORANDUM AND ORDER**

    This is an insurance coverage case involving fifteen insurance companies and one insured.

Pending before the Court is a Motion to Compel Discovery (doc. 294) filed by the insured, Defendant

Bunge North America, Inc. ("Bunge").   Specifically, Bunge moves this Court to compel various

Counterclaim and Crossclaim Defendants ("the Insurers") to produce documents and information

pertaining to (1) reinsurance; (2) loss reserves; (3) claims handling manuals; and (4) document

retention policies.

**A.**      **The Underlying Claims**

    **1.**      **The Hutchinson Site**

    Bunge operated a grain elevator in Hutchinson, Kansas from approximately 1947 to 1995

("Hutchinson Site"). In approximately 1958 or 1959, a carbon tetrachloride tank was installed at the

Hutchinson Site.  According to Bunge, a seal on the pressure tank failed in 1975, causing release of

an estimated 100 to 150 gallons of carbon tetrachloride.

    In 1985, the City of Hutchinson, Kansas ("the City") and the Kansas Department of Health

and Environment ("KDHE") informed Bunge that they considered Bunge's property in Hutchinson

to be a source of, and Bunge to be liable for, groundwater contamination that caused the City to

discontinue use of one of its municipal water supply wells.  As a result, the City and the KDHE asserted a claim for damages against Bunge.

In 1993, the United States Environmental Protection Agency ("EPA") informed Bunge that the EPA considered Bunge's property in Hutchinson to be a source of, and Bunge to be liable for, groundwater contamination that caused the City to close one of its municipal water supply wells.  In 1994, a remediation agreement regarding the contamination was reached between seven companies (including Bunge), the City, and the KDHE. Bunge ultimately settled the claims asserted by the City and the KDHE for $4,755,000.

### 2.     The Salina Site

In 1995, Bunge sold its grain elevator facility in Salina, Kansas to Cargill Incorporated. In connection with that sale, an environmental assessment was completed, and results of that assessment revealed possible groundwater contamination. The results of the environmental assessment were reported to the KDHE, and this agency has now asserted a claim against Bunge seeking relief for property damage.

### 3.     The Katy Elevator Site

In 1999, the KDHE informed Bunge that it considered Bunge's former grain elevator located in Kansas City, Kansas, known as the Katy Elevator, to be a source of, and Bunge to be liable for, groundwater contamination at or near the Katy Elevator. The KDHE has asserted a claim against Bunge seeking relief for property damage.

B.    **The Insurance Policies at Issue**

Based on the pleadings filed in this case to date, the following is a summary of Bunge's primary and excess insurance coverage from 1961 to 1985:

|  | *Primary Policies* | *Excess Policies* |
|---|---|---|
| *1961 - 1970* | Fidelity & Casualty | Unknown |
| *1970 - 1973* | St. Paul's Travelers | United States Fire Insurance |
| *1973 - 1976* | St. Paul's Travelers | North River Insurance |
| *1976 - 1978* | St. Paul's Travelers | Navigators Management Co.[1] (40%); New Hampshire (60%) |
| *1978 - 1980* | ACE[2] | Navigators Management Co. (40%); New Hampshire (60%) |
| *1980 - 1983* | ACE | Navigators Management Co. (100%) |
| *1983 - 1985* | ACE | Navigators Management Co. (60%); Utica (40%) |

C.    **This Lawsuit**

1.    **Plaintiffs' Complaint**

Plaintiffs United States Fire Insurance ("U.S. Fire") and North River Insurance filed this declaratory judgment action against Bunge, St. Paul's Travelers, ACE, and Fidelity & Casualty ("F&C") seeking a declaration that, under the terms of the policy between Plaintiffs and Bunge,

---

[1]At various times from 1976 to 1985, Navigators Management Company, Inc. (f/k/a New York Marine Managers ("NYMM")) included subscribers Navigator's Insurance Company (f/k/a Bellefonte and Northeastern), Midland Insurance, Pennsylvania Lumbermen's Mutual Insurance, Lumbermen's Mutual Insurance, Progressive Casualty Insurance, Republic Insurance, Reinsurance Corporation of New York (f/k/a Insurance Corporation of New York), and Fairmont Specialty Insurance Company (f/k/a Ranger Insurance).

[2]ACE is comprised of the Insurance Company of North America and Century Indemnity.

Plaintiffs do not have an obligation to defend, indemnify, reimburse or pay Bunge on the underlying claim for the Hutchinson Site.

2.    **Bunge's Counterclaims, Crossclaims and Third-Party Claims**

In its Third Amended Answer, Bunge responds to the allegations in Plaintiffs' Complaint and also brings claims against the following insurance companies ("the Insurers"):

a.    Counterclaims against Plaintiffs
- U.S. Fire; and
- North River Insurance;

b.    Cross-claims against Co-Defendants
- St. Paul's Travelers;
- ACE; and
- F&C;

c.    Third-Party claims against
- Navigators Management Company, Inc. (formerly NYMM);
- New Hampshire Insurance Company;
- Utica Mutual Insurance Company;
- Republic Insurance Company;
- Northwestern National Insurance Company of Milwaukee, Wisconsin;
- Navigators Insurance Company;
- Progressive Casualty Insurance Company;
- Pennsylvania Lumbermen's Mutual Insurance Company;
- Insurance Corporation of New York; and
- Fairmont Specialty Insurance Company.

In these counterclaims, cross-claims, and third-party claims, Bunge alleges the Insurers acted in bad faith in failing to fairly investigate Bunge's coverage claims in a timely manner and in failing to accept or reject coverage under the policies within a reasonable time.  Bunge further alleges that F&C, U.S. Fire, and North River Insurance failed and refused to produce and acknowledge evidence of at least one policy.

4

In conjunction with these claims against the Insurers, Bunge seeks damages in the amount of $4,555,000, as well as any future damages Bunge becomes legally obligated to pay with respect to claims relating to the Hutchinson Site, the Salina Site , and the Katy Elevator Site.

**3.     Fairmont Specialty Insurance Company's Cross-claims**

In its Amended Answer to the Third-Party claims brought by Bunge, Fairmont Specialty Insurance Company brings cross-claims for indemnification and contribution against all Insurers.

**D.     The Pending Motion to Compel**

Bunge moves to compel

- all Insurers to produce documents and information pertaining to reinsurance;

- all Insurers to produce documents and information pertaining to loss reserves;

- Insurers Fairmont, U.S. Fire, North River, F&C, and Travelers to produce documents and information regarding claims handling manuals; and

- Insurers U.S. Fire, North River Insurance and F&C to produce documents and information regarding document retention policies.

**1.     Reinsurance Information: All Insurers**

Bunge seeks to compel the Insurers to produce documents in response to the following requests:

20.     All communications between You and any other person or entity (except privileged communications with counsel) relating to any of the Sites.

44.     All reinsurance contracts, agreements or treaties which You believe or contend may afford any right to reinsurance with respect to Bunge's claims relating to any of the Sites.

The Insurers object to these two requests on grounds that (a) reinsurance information is irrelevant to this lawsuit; (b) reinsurance information is confidential and proprietary; (c) the request for reinsurance information is overly broad in time and scope, is vague and ambiguous, and is unduly burdensome; and (d) producing reinsurance information is against public interest.

### a.     Relevancy of Reinsurance Information

The Insurers argue that, in a declaratory relief action involving an insurance coverage dispute such as this, reinsurance information is irrelevant and only tenuously related to issues concerning interpretation of the underlying insurance policies. Bunge disagrees, stating that the reinsurance information it seeks is relevant to Bunge's counterclaims, cross-claims and third-party claims.  To that end, Bunge maintains reinsurance information may shed light on the validity of the Insurers' affirmative defenses, such as late notice. More specifically, Bunge argues the timing and nature of the Insurers' notice to their own insurers will provide information regarding any claimed prejudice the Insurers allegedly suffered from Bunge's allegedly untimely notice.  Bunge further argues the content of communications with reinsurers may provide information regarding the nature and extent of the Insurers' investigation into Bunge's coverage claims, which directly relates to Bunge's assertions of improper claims handling in this case.  Finally, Bunge argues that documents relating to the Insurers' reinsurance agreements may include discussions concerning assessments of their potential liability or exposure under policies issued to Bunge and/or admissions regarding whether Bunge's claims are covered by those policies.

In addition, Bunge asserts certain policies issued by F&C, U.S. Fire and North River Insurance under which Bunge is entitled to coverage have not been produced.  Accordingly, Bunge argues documents relating to F&C, U.S. Fire and North River's reinsurance agreements may provide

additional information regarding those policies and/or establish F&C, U.S. Fire and North River's knowledge of those policies. For instance, Bunge asserts the requested documents may prove that F&C, U.S. Fire and North River were denying to Bunge that certain policies existed while simultaneously seeking coverage from their reinsurers relating to those very same policies.

The Court's analysis of what reinsurance information is discoverable begins with a necessary distinction between the reinsurance agreements themselves and other communications between the Insurers and their reinsurers. Notably, a majority of federal district courts addressing the issue have held that reinsurance agreements themselves are discoverable under Fed. R. Civ. P. 26, which mandates that a party provide other parties "any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment."[3]  In *National Union Fire Ins. Co. v. Continental Illinois Corp.*[4], the United States District Court for the Northern District of Illinois provided a thorough discussion of the discoverability of reinsurance agreements

---

[3]Fed. R. Civ. P. 26(a)(1)(D); *Country Life Ins. Co. v. St. Paul Surplus Lines Ins. Co.*, No. 03-1224, 2005 WL 3690565 (C.D. Ill. Jan. 31, 2005); *Tardiff v. Knox County*, 224 F.R.D. 522, 523 (D. Me. 2004); *Medmarc Cas. Ins. Co. v. Arrow Int'l Inc.*, No. 01CV2394, 2002 WL 1870452 (E.D. Pa. July 29, 2002); *Missouri Pac. R.R. Co. v. Aetna Cas. & Sur. Co.*, No. 93-CV-1898-D, 1995 WL 861147 at *2 (N.D. Tex. Nov. 6, 1995); *Great Lakes Dredge and Dock Co. v. Commercial Union Assur. Co.,* 159 F.R.D. 502, 504 (N.D. Ill. 1995); *Potomac Elec. Power v. California Union Ins. Co.*, 136 F.R.D. 1 (D.D.C., 1990); *National Union Fire Ins. Co. v. Continental Illinois Corp.*, 116 F.R.D. 78, 83 (N.D. Ill. 1987); *Cf. Rhone-Poulenc Rorer Inc. v. Home Indemnity Co. (Rhone-Poulenc I)*, 139 F.R.D. 609 (E.D. Pa.1991)(holding that in a declaratory judgment action, where no money award is sought, Fed. R. Civ. P. 26(b)(2) is not implicated because any ruling in the case would not require the insurer to be "liable to satisfy part or all of a judgment which may be entered in the action.") and concerning reinsurance) and *Rhone-Poulenc Rorer Inc. v. Home Indemnity Co. (Rhone-Poulenc II)*, No. 88-9752, 1991 WL 237636 (E. D. Pa. Nov. 7, 1991) (reconsidering earlier order and finding communications were relevant to affirmative defenses of lack of notice and misrepresentation).

[4]116 F.R.D. 78, 83 (N.D. Ill. 1987).

in coverage litigation between a policyholder and its insurer. The court found that reinsurance agreements were discoverable under Rule 26 for the following reasons:

> Reinsurers ("person[s] carrying on an insurance business") are Insurers' own insurers. If Insurers are held liable under the Policies, they will turn to their reinsurers for partial indemnification, as provided in the reinsurance agreements, for any "payments made to satisfy the judgment."
>
> Insurers contend their reinsurance agreements are not "insurance agreements" under Rule 26(b)(2).[5] True enough, reinsurance agreements are a special breed of insurance policy. * * * But the English language remains the same: Reinsurers "carry[ ] on an insurance business" and "may be liable ... to indemnify [Insurers] for payments made to satisfy the judgment" that Movants hope to obtain. Rule 26(b)(2) does not require that a party's insurer be directly liable to the other party. It is totally irrelevant that the reinsurers would pay Insurers and not the defendants and that Movants cannot directly sue the reinsurers.[6]

In contrast, the United States District Court for the Eastern District of Pennsylvania in *Rhone-Poulenc I*[7] found that reinsurance agreements were not *per se* discoverable under the federal rules. In that case, the court held that disclosure of reinsurance agreements is not required in cases in which the litigation between a policy holder and its insurer is limited to a request for a declaratory judgment and does not involve a claim for damages.[8]  The Court reasoned that in a declaratory judgment action, no money award is sought; thus, Fed. R. Civ. P. 26(b)(2) is not implicated because

---

[5]Fed. R. Civ. P. 26(b)(2), prior to its 1993 amendment, addressed the discovery of insurance agreements.

[6]*National Union Fire Ins. Co. v. Continental Illinois Corp.*, 116 F.R.D. at 83.

[7]*Rhone-Poulenc I*, 139 F.R.D. at 613.

[8]*Id.*

any ruling in the case would not require the insurer to be "liable to satisfy part or all of a judgment which may be entered in the action."[9]

Here, Plaintiffs seek a declaratory judgment regarding insurance coverage on an insurance contract between Plaintiffs and Bunge.  As in *Rhone-Poulenc I*, this Court has not been asked by Plaintiffs to enter a judgment ordering payment of damages by Bunge or the remaining Insurers. Notably, however, Bunge has brought counterclaims, cross-claims and third-party claims against Plaintiffs and the Insurers seeking money damages in the amount of $4,555,000, as well as any future money damages Bunge becomes legally obligated to pay with respect to claims relating to the Hutchinson Site, the Salina Site , and the Katy Elevator Site.  Because a money award is sought in the instant action, the Court finds that – regardless of whether the Court follows the majority view or the more limited view in *Rhone-Poulenc I* – Fed. R. Civ. P. 26(a)(1)(D) mandates the Insurers to disclose their  reinsurance agreements.

In addition to production of the reinsurance agreements themselves, Bunge also seeks all communications between the Insurers and their reinsurers with respect to the Hutchinson Site, the Salina Site , and the Katy Elevator Site.  Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . ..  Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."[10]  Relevancy is broadly construed, and a request for discovery should be considered relevant if there is "any

---

[9]*Id.*

[10]Fed. R. Civ. P. 26(b)(1).

possibility" that the information sought may be relevant to the claim or defense of any party.[11] A request for discovery should be allowed "unless it is clear that the information sought can have no possible bearing" on the claim or defense of a party.[12]

When the discovery sought appears relevant, the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.[13] Conversely, when the request is overly broad on its face or when relevancy is not readily apparent, the party seeking the discovery has the burden to show the relevancy of the request.[14]

Notwithstanding the parameters of discovery set forth in the federal rules, the law with respect to communications between insurer and reinsurer – as opposed to the reinsurance agreement themselves – is unclear.  Based on the type of objection lodged to a request for such communications, as well as the specific reasons asserted by the insured for desiring the information, there are court

---

[11]*Owens v. Sprint/United Mgmt. Co.*, 221 F.R.D. 649, 652 (D. Kan. 2004) (citation omitted).

[12]*Id.*

[13]*Gen. Elec. Capital Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D.Kan.2003) (citation omitted).

[14]*Owens*, 221 F.R.D. at 652 (citation omitted).

decisions that have both allowed[15] and denied[16] this discovery. Simply put, whether communications between insurers and their reinsurers are discoverable is dependent on the nature of the issues to which they are alleged to be relevant.

In *Rhone-Poulenc I*,[17] the court rejected the policy-holder's efforts to discover either the reinsurance agreements or communications with reinsurers for the purpose of interpreting the underlying policies. The court held:

> [D]iscovery concerning reinsurance agreements to which the plaintiffs were not parties would not assist in the determining of the mutual intent of the parties in the primary and excess insurance policies issued to the plaintiffs, which are in litigation in this case. Any information regarding reinsurance would at best be evidence of undisclosed unilateral intention, which would not be material to the interpretation of the insurance contract at issue.[18]

---

[15]See e.g., *Employers Commercial Union Ins. Co. of America v. Browning-Ferris Industries of Kansas City, Inc.*, 91-2161-JWL, 1993 WL 210012 (D. Kan. 1993) (documents created in the underwriting of reinsurance may provide evidence of lost or missing policies); *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.("Rhone-Poulenc II")*, 1991 WL 237636 (E.D. Pa. 1991) (ceding insurer's discovery of loss notices to reinsurers are discoverable "since whether or not the insurers gave timely notice to their reinsurers is clearly relevant to the notice defenses raised by many insurers [in the underlying litigation]"); *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Continental Illinois Corp.*, 116 F.R.D. 78 (N.D. Ill. 1987) (holding that reinsurance information is discoverable in an insurer's rescission action based on the insured's misrepresentations because the insurer's communications with its reinsurers might reveal the information on which the insurer relied in deciding to issue the policy).

[16]*See e.g., Great Lakes Dredge and Dock Co. v. Commercial Union*, 159 F.R.D. 502, 504 (D. Ill. 1995) (finding actual reinsurance policies were discoverable under Rule 26(a)(1)(D), but a request for discovery of all documents relating to reinsurance was too attenuated); *Rhone-Poulenc Rorer, Inc. v. Home Indemnity Co. ("Rhone-Poulenc I")*, 139 F.R.D. 609, 612 (E.D. Pa.1991); *Leksi, Inc. v. Federal Ins. Co.*, 129 F.R.D. 99, 106, 115 (D.N.J. 1989); *Independent Petrochemical Corp. v. Aetna Cas. & Surety Co.*, 117 F.R.D. 283, 286-88 (D.D.C. 1986);

[17]139 F.R.D. 609 (E.D. Pa. 1991).

[18]*Id.* at 611-12 (internal quotations omitted).

11

Notably, the court suggested in dictum that communications between an insurer and its reinsurer over the meaning of a particular policy provision could be discoverable if there had been a previous determination by the court that the provision at issue was ambiguous and therefore subject to interpretation by resort to extrinsic evidence.[19]

In *Rhone-Poulenc II*[20], however, the court reconsidered its earlier refusal to allow discovery of communications between the insurers and their reinsurers and granted such discovery. Although reiterating that communications between an insurer and its reinsurer were "irrelevant to determining the intent of the contracting parties," the court concluded that the discovery was relevant to the affirmative defenses of lack of notice and misrepresentation asserted by the insurers. With respect to the lack of notice defense, the court stated: "By raising a defense, a party opens the door to the discovery concerning that defense. * * * Since whether or not the insurers gave timely notice to their reinsurers is clearly relevant to the notice defenses raised by many of the insurers, that information should be discoverable as to those insurers.[21]

Here, the underlying policyholder, Bunge, asserts that reinsurance communications between the Insurers and their reinsurers are relevant to

1.     the Insurers' affirmative defense of late notice; in other words, the timing and nature of the Insurers' notice to their own insurers will provide information regarding any claimed harm the Insurers allegedly suffered from Bunge's alleged untimely notice;

---

[19]*Id.* at 612.

[20]Civ. A. No. 88-9752, 1991 WL 237636, *2 (E.D. Pa. Nov. 7, 1991).

[21]*Id.*

12

2.    the nature and extent of the Insurers' investigation of Bunge's coverage claims, which relates directly to Bunge's counterclaims, cross-claims and third-party claims of bad faith and improper handling of its claims;

3.    assessments by the Insurers regarding their potential liability or exposure under policies issued to Bunge;

4.    admissions by the Insurers regarding whether Bunge's claims are covered by the policies at issue; and

5.    the policies issued by F&C, U.S. Fire and North River under which Bunge is entitled to coverage but which have not been produced by these particular Insurers in order to reassemble the terms of the original contract.

The Court finds that, under the circumstances presented here, reinsurance information is discoverable. Specifically, the Court finds that reinsurance is relevant and discoverable here for purposes of rebutting the Insurers' defense of late notice, for purposes of establishing Bunge's claims of bad faith and improper handling, and for purposes of reconstructing the terms of any lost policies.

**b.    Confidential and Proprietary Nature of Reinsurance Information**

The Insurers further object to production of the reinsurance information requested by Bunge on grounds that the reinsurance  information is confidential and proprietary. More specifically, the Insurers assert that the type of reinsurance materials requested by Bunge may contain confidential business information regarding the pricing and coverage of reinsurance policies which, if revealed to competitors, could damage the insurance carriers' ability to compete in the reinsurance market as well as harm present business relationships with insurers.

To the extent that the Insurers are attempting to assert an objection based on confidentiality, that objection will be overruled. The Court appreciates the Insurers' desire to keep the documents at

issue confidential, but "a concern for protecting confidentiality does not equate to privilege."[22] Although information is not shielded from discovery on the sole basis that the information is confidential, a party may request the court enter a protective order pursuant to Fed. R. Civ. P. 26(c) as a means to protect such confidential information. The Court finds that entry of such a protective order here will appropriately safeguard any potential for harm associated with disclosure of the information at issue here.  Accordingly, the Court hereby orders the parties to limit their use of reinsurance information to purposes directly related to this litigation and prohibits the parties from disclosing this information to anyone outside this litigation.[23]

### c.   Overbreadth, Ambiguity, and Undue Burden of Reinsurance Requests

The Insurers also argue that the request for reinsurance information by Bunge is overly broad, vague and ambiguous, and unduly burdensome. In support of this argument, the Insurers state that Bunge has used omnibus phrases such as "relating to" in the discovery requests.

The Insurers correctly observe that this Court has held on several occasions that a document request may be overly broad on its face if it uses an omnibus term such as "relating to," "pertaining to," or "concerning."[24] That rule, however, applies only when the omnibus term is used with respect

---

[22]*DIRECTV, Inc. v. Puccinelli*, 224 F.R.D. 677, 682 (D. Kan. 2004) (citing *Sonnino v. Univ. of Kan. Hosp. Auth.*, 220 F.R.D. 633, 642 (D. Kan. 2004)).

[23]Although an Agreed Protective Order regarding confidentiality in this case is already in place, *see* February 27, 2006 Agreed Protective Order (doc. 163), that Order appears to be applicable only  to documents produced that were "protected by express confidentiality agreements" predating this litigation.

[24]*Cardenas v. Dorel Juvenile Group, Inc.*, 232 F.R.D. 377, 382 (D. Kan. 2005) (citing *Sonnino v. University of Kansas Hosp. Authority*, 221 F.R.D. 661, 667 (D. Kan. 2004); *Aikens v. Deluxe Fin. Servs., Inc.*, 217 F.R.D. 533, 538 (D. Kan. 2003); *Employers Commercial Union Ins. Co. of America v. Browning-Ferris Industries*, No. 91-2161-JWL, 1993 WL 210012, at *3 (D. Kan. Apr. 5, 1993)).

to a general category or broad range of documents.[25]  More specifically, a request may be overly broad on its face "if it is couched in such broad language as to make arduous the task of deciding which of numerous documents may conceivably fall within its scope."[26]  A request seeking documents "pertaining to" or "concerning" a broad range of items "requires the respondent either to guess or move through mental gymnastics . . . to determine which of many pieces of paper may conceivably contain some detail, either obvious or hidden, within the scope of the request."[27]  When, however, the omnibus phrase modifies a sufficiently specific type of information, document, or event, rather than large or general categories of information or documents, the request will not be deemed objectionable on its face.[28]

Applying these standards, the Court finds that requests 20 and 44 are not so all-encompassing as to make them overly broad on their face. The omnibus term "relating to" modifies the term "Sites," which is specifically defined in Bunge's document requests as follows:

---

[25]*Id.* (citing *Sonnino*, 221 F.R.D. at 667-68; *Aikens*, 217 F.R.D. at 538).

[26]*Id.* (citing *Audiotext Commc'ns Network, Inc. v. U.S. Telecom, Inc.*, No. Civ. A. 94-2395-GTV, 1995 WL 625962, at *6 (D. Kan. Oct. 5, 1995)).

[27]*Id.*

[28]*Id.* (citing *Sonnino*, 221 F.R.D. at 667-68). For example, this Court has held a request overly broad and unduly burdensome on its face where it sought all documents "regarding" or "relating to" to the lawsuit and the eleven plaintiffs and their EEOC charges. *See Aikens*, 217 F.R.D. at 538.  This Court also held a request in a breach of contract suit overly broad on its face where it sought documents that referred or related to any alleged or actual breaches of the contract at issue, the plaintiff's reasons for breaching the contract, and communications between the defendant and any other person regarding termination of the contract. *See Western Resources, Inc. v. Union Pacific R.R. Co.*, No. 00-2043-CM, 2001 WL 1718368, at *3 (D. Kan. Dec. 5, 2001).  Similarly, this Court held a request facially overbroad seeking "all documents concerning plaintiff." *See Pulsecard, Inc. v. Discover Card Servs.*, No. 94-2304-EEO, 1996 WL 397567, at *6 (D. Kan. July 11, 1996).

The term "Hutchinson Site" means the property located in Hutchinson, Kansas with respect to which the United States Environmental Protection Agency ("USEPA"), the Kansas Department of Health and Environment ("KDHE") and/or the City of Hutchinson, Kansas have asserted claims against Bunge and/or others, for property damage arising from environmental contamination. The term "Salina Site" means the property located in Salina, Kansas with respect to which KDHE has asserted claims against Bunge and/or others, for property damage arising from environmental contamination. The term "Katy Elevator Site" means the property located in Kansas City, Kansas with respect to which KDHE has asserted claims against Bunge and/or others, for property damage arising from environmental contamination. The term "Sites" refers collectively to the Hutchinson Site, the Salina Site and the Katy Elevator Site.

Based on this definition, the Court finds that the phrase "relating to" does not modify a large number or general category of things or events. Thus, the request is not objectionable on this basis.

> **d.      Public Interest in Protecting Reinsurance Information from Disclosure**

Finally, the Insurers argue that the request for reinsurance information by Bunge is against public interest. In support of this argument, the Insurers propose that "insurers should be unimpeded in their efforts to obtain internal financial security and should not be fearful that the reinsurance process will be used against them in unrelated coverage litigation."

The Court rejects the Insurers' argument. As a preliminary matter, the Insurers fail to cite to any authority to support this proposition. Moreover, the Insurers fail to describe how discovery of reinsurance information compromises their efforts to obtain financial security or how discovery of reinsurance information offends any public interest. A conclusory objection such as this one does not keep relevant information from being discoverable.

## 2.     Reserve Information: All Insurers

Bunge requests the Court compel the Insurers to produce documents in response to the following request:

> 45.     Each document that refers or relates to any loss reserve or any other account that has been established for Bunge's claims relating to any of the Sites.

The Insurers object to this request on grounds that (a) loss reserve information is irrelevant to this litigation; (b) loss reserve information is protected work product; (c) the request for loss reserve information is overly broad in time and scope, is vague and ambiguous, and is unduly burdensome; and (d) the request for loss reserve information is against public interest.

### a.     Relevancy of Reserve Information

As a preliminary matter, the Court notes that Bunge did not define the term "reserve" in its document requests and the parties have not defined the term in any of the pleadings associated with the pending motion. In Black's Law Dictionary, the term "reserve" is defined, in part, as "a fund of money set aside by a bank or an insurance company to cover future liabilities."[29]  Thus, the question presented is whether information regarding money set aside by the Insurers to cover future liabilities related to the Hutchinson, Salina, and Katy Elevator Sites is relevant to the claims and defenses in this lawsuit.

Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . ..  Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead

---

[29]Black's Law Dictionary 1309 (7th ed.1999).

17

to the discovery of admissible evidence."[30]   Relevancy is broadly construed, and a request for discovery should be considered relevant if there is "any possibility" that the information sought may be relevant to the claim or defense of any party.[31] A request for discovery should be allowed "unless it is clear that the information sought can have no possible bearing" on the claim or defense of a party.[32]

When the discovery sought appears relevant, the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.[33] Conversely, when the request is overly broad on its face or when relevancy is not readily apparent, the party seeking the discovery has the burden to show the relevancy of the request.[34]

The Court finds Bunge's request for reserve information is relevant on its face.   More specifically, the Court finds information regarding money the Insurers set aside to cover future liabilities to Bunge for the Hutchinson, Salina and Katy Elevator Sites, as well as the timing of when they set this reserve, is relevant to

---

[30]Fed. R. Civ. P. 26(b)(1).

[31]*Owens v. Sprint/United Mgmt. Co.*, 221 F.R.D. 649, 652 (D. Kan. 2004) (citation omitted).

[32]*Id.*

[33]*Gen. Elec. Cap. Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D. Kan. 2003) (citation omitted).

[34]*Owens*, 221 F.R.D. at 652 (citation omitted).

- the Insurers' position that they have no liability to Bunge related to the Hutchinson, Salina, and Katy Elevator Sites;

- Bunge's counterclaims and cross-claims that the Insurers acted in bad faith

    - in failing to timely and fairly investigate Bunge's coverage claims; and
    - in failing to accept or reject coverage under the policies within a reasonable time;

- Bunge's allegation that F&C, U.S. Fire, and North River Insurance failed and refused to produce and acknowledge evidence of at least one policy.

Because the Court finds the discovery sought appears relevant on its face, it is the Insurers – as the parties resisting the discovery – that have the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.  In an attempt to meet this burden, the Insurers argue reserve information is not relevant because "reserves are only an estimate of potential liability and do not normally entail an evaluation of coverage based upon a thorough factual and legal consideration when routinely made as a claim analysis."  The Insurers further argue that establishment of a reserve is generally based on an underlying assumption of liability, and is not based on an actual evaluation of the likelihood of liability or coverage.

The Court finds the Insurers' conclusory arguments here are inadequate to establish lack of relevance.  Although the Insurers assert that setting reserves is generally a perfunctory task accomplished without factual or legal considerations, the Insurers have failed to provide any evidentiary material to support such an assertion.  In other words, the Insurers have not discussed whether there is a Kansas state law or regulation requiring insurance companies to set reserves as a matter of course, have not submitted affidavits regarding to what extent factual or legal considerations

were taken into account when setting the reserves for the Hutchinson, Salina and Katy Elevator Sites, and have not submitted an affidavit or company materials to identify and/or explain individual company policies and practices regarding when and how reserves are set. Given the Insurers have failed to provide any evidentiary material to support such their assertions, and under the broad standard of relevance at the discovery stage, the Court finds that the information sought may demonstrate the extent to which the Insurers investigated and considered Bunge's claim, and thus is relevant to the question of good or bad faith in failing to indemnify or defend[35] Bunge.

In concluding that reserve information is discoverable under the particular circumstances set forth in this case, the Court has read and carefully considered the cases cited by all of the parties in their briefs and has conducted independent research of its own. Some of these cases have found loss reserve information relevant, not because setting a loss reserve constitutes an admission of liability, but because the information may be pertinent to other issues, such as the plaintiff's attempts to rebut a defense, notice, or the defendant's bad faith.[36] Conversely, other cases have found reserve information irrelevant, usually on grounds that reserves are generally only estimates of potential

---

[35]Even if – as the "excess" Insurers argue – a duty to defend has not yet been triggered for the "excess" Insurers, reserve information is relevant to Bunge's assertions that the Insurers have acted in bad faith in failing to investigate, consider and indemnify Bunge.

[36]*Nicholas v. Bituminous Cas. Corp.*, 235 F.R.D. 325, 331 (N.D. W.Va. 2006); *Athridge v. Aetna Cas. and Sur. Co*., 184 F.R.D. 181, 193-94 (D.D.C.1998) (reserve information relevant to the plaintiffs' accusations of bad faith and breach of duty); *Culbertson v. Shelter Mut. Ins. Co.*, Nos. 97-1609 and 97-1969, 1998 WL 743592 (E.D. La.1998) (same); *Savoy v. Richard A. Carrier Trucking, Inc.*, 176 F.R.D. 10, 12 (D. Mass.1997) (quoting *Atlanta Coca-Cola Bottling Co. v. Transamerica Ins. Co.*, 61 F.R.D. 115, 117 (N.D. Ga.1972) (holding date and amount of reserve, and any modification thereto, relevant to whether insurer acted in bad faith)); *North River Ins. Co. v. Greater New York Mutual Ins. Co.*, 872 F. Supp. 1411, 1412 (E.D. Pa.1995); *Stonewall Ins. Co. v. National Gypsum Co.*, No. 86-9671, 1988 WL 96159, at *7 (S.D.N.Y.1988).

liability and do not normally entail an evaluation of coverage based upon a thorough factual and legal consideration when routinely made as a claim analysis.[37]

The primary difference between these two lines of cases is not the end result – whether or not loss reserve information is found to be relevant – but instead is the level of analysis conducted by the courts in reaching a conclusion regarding relevancy.  In those cases holding loss reserve information was relevant, most courts conducted a thorough relevancy analysis of the claims and defenses pled, as well as specific facts regarding why the insured believes the information is relevant and how the insurers in that particular case actually set reserves.  Conversely, in those cases holding loss reserve information was not relevant, most courts did not consider or rely on any facts specific to the case, but instead accepted the general proposition that setting reserves is perfunctory (and sometimes mandatory) and does not entail an evaluation of coverage based upon any factual and legal considerations.

Upon review of these cases, the Court finds it appropriate to determine relevancy of reserve information on a case-by-case basis by considering the claims and defenses pled, as well as any specific facts presented regarding why the insured believes the information is relevant and how the

---

[37]*Spearman Indus., Inc. v. St. Paul Fire and Marine Ins. Co.*, 128 F.Supp.2d 1148 (N.D. Ill. 2001); *Coltec Industries, Inc. V. American Motorists Ins. Co.*, 197 F.R.D. 368, 372 (N.D. Ill 2000) (loss reserves information only tenuously relevant to lost policy issues); *Fidelity and Deposit Co. of Maryland v. McCulloch*, 168 F.R.D. 516, 525 (E.D. Penn. 1996) (tenuous link between reserves and actual liability given that numerous considerations factor into complying with the statutory directive); *American Protection Ins. Co. V. Helm Concentrates, Inc.*, 140 F.R.D. 448, 450 (E.D. Ca. 1991) (reserve information not discoverable even in light of claim that insured acted in bad faith in denying claim); *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 139 F.R.D. 609, 614 (E.D. Pa.1991) (same); *Leksi, Inc. v. Federal Ins. Co.*, 129 F.R.D. 99, 106 (D.N.J.1989) (same); *Champion Int'l Corp. v. Liberty Mut. Ins. Co.*, 128 F.R.D. 608, 611 (S.D.N.Y.1989); *Independent Petrochemical Corp. v. Aetna Cas. & Sur. Co.*, 117 F.R.D. 283, 288 (D.D.C.1986) (same); *Union Carbide Corp. v. Travelers Indem. Co.*, 61 F.R.D. 411, 413 (W.D. Pa.1973) (same).

insurers in that particular case actually set reserves.   To that end, the Court finds the facts presented on this issue in a case previously decided by this Court – *Youell v. Grimes*[38] – are readily distinguishable from the facts presented here.  In that case, Youell objected to providing reserve information on grounds of relevancy.  The defendant subsequently filed a motion to compel arguing that the reserve information requested may possibly be relevant to the underwriters' interpretation of a policy exclusion, to disputes over standing and capacity, to the meaning and application of the Cooperation Clause, and to the  underwriter's lack of good faith performance and waiver.  In light of defendant's failure to explain how these particular underwriting issues related to reserve information, the Court found the relevance of the request was not readily apparent.  Accordingly, and in accordance with the law of this jurisdiction[39], the Court placed the burden of establishing relevance on the defendant.  Again, because the defendant failed to provide any evidence to support a finding that the reserve information was relevant to the underwriting issues presented, the Court sustained Youell's objection based on relevancy.

The facts here differ significantly from the facts in *Youell*.  Most importantly, Bunge has specifically set forth how the reserve information is relevant to the claims and defenses in this case. More specifically, Bunge asserts that the reserve information is relevant to whether the Insurers acted in bad faith in failing to timely and fairly investigate Bunge's coverage claims and in failing to accept or reject coverage under the policies within a reasonable time.  The Court has found the relevancy of Bunge's request readily apparent in that the timing or establishment of any reserve bears on the

---

[38]202 F.R.D. 643, 652 (D. Kan. 2001) (Waxse, J.), *vacated in part on other grounds*.

[39]*Owens v. Sprint/United Mgmt. Co.*, 221 F.R.D. 649, 652 (D. Kan. 2004) (citation omitted) (when the relevancy of the request is not readily apparent, the party seeking the discovery has the burden to show the relevancy of the request.)

Insurers' handling of Bunge's claim and any bad faith or breach of duty related thereto. The Court has further found the Insurers' arguments are inadequate to establish lack of relevance. For these reasons, the Court will overrule the Insurers' objection here and will order the Insurers to produce the reserve information requested.

### b.    Work Product

The Insurers also object to the production of loss reserve information on grounds that it is protected from disclosure by the work product doctrine.   The work product doctrine, which is embodied in Fed. R. Civ. P. 26(b)(3),[40] protects from discovery documents, things and mental impressions of a party or his representative, particularly his attorney, developed for or in anticipation of litigation or trial. The purpose of the doctrine is to permit attorneys to prepare for litigation with a "certain degree of privacy," and without undue interference or fear of intrusion or exploitation of one's work by an adversary.[41]

As the asserting party, the Insurers have the burden of establishing work product protection.[42] To carry that burden, the Insurers must make a "clear showing" that the asserted objection applies.[43] A "blanket claim" as to the applicability of the work product doctrine does not satisfy the burden of

---

[40]"Unlike the attorney client privilege, the work product privilege is governed, even in diversity cases, by a uniform federal standard embodied in Fed. R. Civ. P. 26(b)(3)." *Frontier Refining, Inc. v. Gorman-Rupp Co., Inc.*, 136 F.3d 695, 702 (10th Cir.1998) (citation omitted).

[41]*Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947).

[42]*See McCoo v. Denny's, Inc.*, 192 F.R.D. 675, 683 (D. Kan. 2000); *Boyer v. Board of County Comm'rs*, 162 F.R.D. 687, 688 (D. Kan 1995).

[43]*See McCoo*, 192 F.R.D. at 683; *Ali v. Douglas Cable Communications, Ltd. Partnership*, 890 F. Supp. 993, 944 (D. Kan.1995)

proof.[44]   It is well settled that the party seeking to invoke work product immunity has the burden to establish all elements of the immunity and that this burden can be met only by an evidentiary showing based on competent evidence.[45]   "That burden cannot be "discharged by mere conclusory or *ipse dixit* assertions."[46]   A party's failure to meet this burden when the trial court is asked to rule upon the existence of the work product immunity is not excused because the document is later shown to be one that would have been privileged if a timely showing had been made.[47]

To establish work product protection, the Insurers must show that "(1) the materials sought to be protected are documents or tangible things; (2) they were prepared in anticipation of litigation or for trial; and (3) they were prepared by or for a party or a representative of that party."[48]   To that end, the Insurers have failed to submit to the Court any information related to these elements, *i.e.*, who prepared, drafted and set the reserves, when the reserves were set, why the reserves were set . . .. Simply put, the Insurers' "blanket claim" as to the applicability of the work product doctrine does not satisfy the burden of proof; accordingly, the Insurers' objection to producing reserve information based on work product protection will be overruled.

---

[44]*McCoo*, 192 F.R.D. at 680.

[45]*Id.*

[46]*Id.* (quotations and citations omitted).

[47]*Peat, Marwick, Mitchell & Co. v. West*, 748 F.2d 540, 542 (10th Cir.1984); *McCoo*, 192 F.R.D. at 680.

[48]*Johnson v. Gmeinder*, 191 F.R.D. 638, 643 (D. Kan. 2000) (citations omitted).

###### c.        Overbreadth, Ambiguity, and Undue Burden of Reserve Requests

For the reasons stated in Section D(1)(c) above, the Court finds that request 45 is not so all-encompassing as to make it overly broad on its face. Based on the definition of "Sites" provided by Bunge in its discovery requests, the Court finds that the phrase "relating to" does not modify a large number or general category of things or events. Thus, the request is not objectionable on this basis.

###### d.        Public Interest in Protecting Reserve Information from Disclosure

Finally, the Insurers argue that the request for reserve information by Bunge is against public interest. In support of this argument, the Insurers propose that "[c]andid establishment of reserves by insurers would be detrimentally impacted if reserve information were construed as some form of admission regarding liability and were thus discoverable by a policyholder."

The Court rejects the Insurers' argument. As a preliminary matter, there has been no finding here that reserve information is relevant as an admission against interest for liability purposes. Thus, the proposition itself and the case cited by the Insurers in support of this proposition does not persuade the Court that discovery of reserve information is against public policy.

###### 3.        Claims Handling Manuals: Fairmont, U.S. Fire, North River, F&C, Travelers

Bunge next requests the Court compel the referenced Insurers to produce documents in response to the following requests:

14.     All documents consulted by You to determine how to handle, evaluate, investigate or respond to the claims submitted by Bunge with respect to any of the Sites.

25.     Your claim processing, claims handling and/or claims management procedures or manuals, including any amendments, revisions, additions or deletions thereto.

32.     Your claims manual and/or written procedures concerning the handling of
environmental claims.

In response to these requests, F&C maintains it does not possess any documents that could fairly be categorized as a claims handling manual; thus, F&C argues the motion to compel such documents should be denied on grounds that the documents do not exist.

Fed. R. Civ. P. 34 imposes a duty on the responding party to produce documents that are in the "possession, custody or control of the party."[49]   To that end, the Court cannot compel a party to produce documents that do not exist or that are not in that party's possession, custody, or control.[50] Although the Court finds it difficult to imagine that F&C does not possess any written procedures responsive to any of these three requests, there has been no information submitted by Bunge to lead the Court to question the veracity of F&C's statement that no responsive documents exist. The Court thus has no basis upon which to compel F&C to produce responsive documents. The Court, will, however, require F&C to serve supplemental written responses to each of these requests representing that no responsive documents are in its possession, custody, or control.

Fairmont, U.S. Fire, North River and F&C also object to producing the claims handling documents on grounds that they are confidential trade secrets.  Although these Insurers do not cite to the rule directly, the Court construes their objection to be based on Fed. R. Civ. P. 26(c)(7), the federal rule governing protection of trade secrets from discovery.

---

[49]Fed. R. Civ. P. 34.

[50]*Sonnino v. University of Kansas Hosp. Authority*, 220 F.R.D. 633, 640 (D. Kan. 2004) (citing *Am. Maplan Corp. v. Heilmayr*, 203 F.R.D. 499, 501 (D.Kan.2001)).

"[T]here is no absolute privilege for trade secrets and similar confidential information."[51]  To resist discovery under Rule 26(c)(7), a person must first establish that the information sought is a trade secret and then demonstrate that its disclosure might be harmful.[52]  If these requirements are met, the burden shifts to the party seeking discovery to establish that the disclosure of trade secrets is relevant and necessary to the action.[53]  The district court must balance the need for the trade secrets against the claim of injury resulting from disclosure.[54]  If proof of relevancy or need is not established, discovery should be denied.[55]  On the other hand, if relevancy and need are shown, the trade secrets should be disclosed, unless they are privileged or the requests are unreasonable, oppressive, annoying, or embarrassing.[56]

It is within the sound discretion of the trial court to decide whether trade secrets are relevant and whether the need outweighs the harm of disclosure.[57]  Likewise, if the trade secrets are deemed relevant and necessary, the appropriate safeguards that should attend their disclosure by means of a protective order are also a matter within the trial court's discretion.[58]

---

[51]*Centurion Industries, Inc. v. Warren Steurer and Associates*, 665 F.2d 323, 325 (10th Cir. 1981) (citing *Federal Open Market Committee v. Merrill*, 443 U.S. 340 (1979)).

[52]*Id.* (citation omitted).

[53]*Id.*

[54]*Id.* (citation omitted).

[55]*Id.*

[56]*Id.* (citation omitted).

[57]*Id.*

[58]*Id.*

Bunge argues that claims handling materials are relevant to Bunge's assertion that its claims were improperly handled.  Bunge further argues these materials may reveal the Insurers' guidelines for interpreting policy terms, conditions or exclusions and/or may also demonstrate how the Insurers' positions in this litigation are inconsistent with their previous coverage positions.  In response, the Insurers argue that any potential relevancy of these materials is outweighed by the harm of disclosure.  More specifically, the Insurers argue disclosure of their claims handling materials would be harmful in that competitors (other insurance companies who are parties to this action) could utilize the documents to gain an unfair competitive advantage.

Upon consideration of the arguments presented, the Court finds the claims handling materials are relevant and that this relevancy outweighs any potential for harm related to their disclosure.  In order to further safeguard Insurers from the potential for harm that they have identified, the Court hereby orders the parties to limit their use of claims handling materials to purposes directly related to this litigation and prohibits the parties from  disclosing this information to anyone outside this litigation.[59]

### 4.     Document Retention Policies: U.S. Fire, North River, F&C

Finally, Bunge requests the Court compel F&C, U.S. Fire and North River Insurance to produce documents in response to the following requests:

24.     Your insurance policy retention procedure or guidelines (and any other similar procedures, manuals or documents), including any amendments, revisions, additions or deletions thereto.

---

[59]Although an Agreed Protective Order regarding confidentiality in this case is already in place, *see* February 27, 2006 Agreed Protective Order (doc. 163), that Order appears to be applicable only  to documents produced that were "protected by express confidentiality agreements" predating this litigation.

30.    All documents which discuss insurance policy retention schedules, insurance policy retention procedures, dead storage retention schedules, dead storage retention procedures, expired policy retention schedules, expired policy retention procedures, closed claim file retention schedules, and/or closed claim file retention procedures.

31.    All documents, written guidance or procedures, and/or manuals that discuss policy retention schedules, policy retention procedures, dead storage retention schedules, dead storage retention procedures, expired policy retention schedules, expired policy retention procedures, closed claim file retention schedules, and/or closed claim file retention procedures with respect to the locations at which You store Your policies of insurance.

Bunge claims these requests are relevant to the discovery of lost policies.  In response to these requests, F&C , U.S. Fire and North River Insurance assert various objections, including that these requests are vague, overly broad, unduly burdensome, irrelevant and seek confidential trade secret information.

Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . .. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  Relevancy is broadly construed, and a request for discovery should be considered relevant if there is "any possibility" that the information sought may be relevant to the claim or defense of any party. A request for discovery should be allowed "unless it is clear that the information sought can have no possible bearing" on the claim or defense of a party.

When the discovery sought appears relevant, the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption

29

in favor of broad disclosure. Conversely, when the request is overly broad on its face or when relevancy is not readily apparent, the party seeking the discovery has the burden to show the relevancy of the request.

The Court finds Bunge's Request 24, which seeks the actual insurance policy retention procedures and guidelines, is relevant on its face.   This litigation involves policies issued by F&C, U.S. Fire and North River Insurance to Bunge for which Bunge's documentation is incomplete. F&C, U.S. Fire and North River Insurance assert they no longer have copies of these policies.  Given this assertion, Bunge should be permitted to discover the document retention policies of these particular Insurers because such policies may (1) account for, or otherwise explain, F& C, U.S. Fire and North River's assertion that they are no longer in possession of the insurance policies; or (2) establish that F&C, U.S. Fire and North River Insurance's inability to produce the insurance policies is due to a failure to comply with their own document retention procedures.

Because Request 24 appears relevant, F&C, U.S. Fire and North River Insurance have the burden to establish the lack of relevance or such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure. Notably, these three Insurers have failed to provide in their briefing any basis for a finding that Request 24 is vague, overly broad, unduly burdensome, irrelevant or seeks confidential trade secret information.  Accordingly, objections to Request 24 will be overruled.

The Court reaches a different conclusion with regard to Requests 30 and 31.  The Court finds these requests are overly broad and the relevancy is not apparent on their face.  As written, Requests 30 and 31 go well beyond a request for actual document retention policies and procedures for the

relevant time period.  Instead, Requests 30 and 31 seek any and all documents that even mention or discuss a document retention policy or procedure.

Because the Court finds these two requests are overly broad on their face, Bunge – as the party seeking the discovery – has the burden to show the relevancy of the requests. Although Bunge makes numerous arguments supporting its contention that the actual documents retention policies are relevant, Bunge makes no argument regarding why any and all documentation that mentions or refers to such policies is relevant.  Accordingly, the Court finds Bunge has failed to meet its burden and will sustain F&C, U.S. Fire and North River Insurance's objections to Requests 30 and 31.

Based on the discussion above, it is hereby ordered that Bunge's Motion to Compel is granted in part and denied in part.

(1)    Bunge's Motion to Compel is granted to the extent that

• the Insurers' objections to Bunge's Requests 20 and 44 are overruled and the Insurers are hereby ordered to produce the reinsurance documents and information requested within ten (10) days from the date of this Memorandum and Order.

• the Insurers' objections to Bunge's Request 45 are overruled and the Insurers are hereby ordered to produce the loss reserve documents and information requested within ten (10) days from the date of this Memorandum and Order;

• Fairmont, U.S. Fire, North River, F&C, and Travelers' objections to responding to Bunge's Requests 14, 25 and 32 are overruled and these Insurers are hereby ordered to produce the claims handling materials requested within ten (10) days from the date of this Memorandum and Order.  To the extent any of these Insurers claim they do not possess any responsive materials, such Insurers shall, within ten (10) days from the date of this Memorandum and Order, serve supplemental written responses to each of these requests representing that no responsive documents are in its possession, custody, or control.

• F&C, U.S. Fire, and North River Insurance Company's objections to responding to Bunge's Request 24 are overruled and these Insurers are hereby ordered to produce, within ten (10) days from the date of this Memorandum and Order, all documents responsive to Request 24.

31

(2)     Bunge's Motion is denied to the extent that F&C, U.S. Fire, and North River
        Insurance Company's objections to Bunge's Requests 30 and 31 are sustained and
        these Insurers shall not be required to produce documents responsive to these two
        requests.

(3)     It is further ordered that the parties shall limit their use of reinsurance and claims
        handling materials produced to purposes directly related to this litigation.  The parties
        also shall be prohibited from disclosing reinsurance and reserve information to anyone
        outside this litigation.

IT IS SO ORDERED.

Dated in Kansas City, Kansas on this 25th day of May, 2007.


                                    s/ David J. Waxse_____
                                    David J. Waxse
                                    United States Magistrate Judge

cc:     All counsel and *pro se* parties