IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES FIRE INSURANCE COMPANY, et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 05-2192-JWL |
| BUNGE NORTH AMERICA, INC., et al., | ) ) | |
| Defendants, | ) ) | |
| and | ) ) | |
| THE FIDELITY AND CASUALTY COMPANY OF NEW YORK, et al., | ) ) ) | |
| Additional Cross-Claim Defendants. | ) ) | |
| _____ | ) | |

## <u>MEMORANDUM AND ORDER</u>

This case involves claims asserted among a single insured party, defendant Bunge

North America, Inc. ("Bunge"), and various primary and excess liability insurers relating

to Bunge's environmental liability at three different sites in Kansas.  On May 25, 2007,

Magistrate Judge Waxse issued a Memorandum and Order granting in part and denying

in part Bunge's motion to compel the production of various documents by the Insurers

(Doc. #334, hereinafter cited as "Mag. J. Order").  At issue before the Court are the

Insurers' motions for review of the Magistrate Judge's order pursuant to Fed. R. Civ. P.

72(a) and Local Rule 72.1.4(a) (Doc. ## 340, 344, 345, 346, 347, 348).[1]  For the reasons set forth below, the motions are denied, and the Insurers are ordered to produce documents in accordance with the Magistrate Judge's order on or before July 27, 2007.

This matter also comes before the Court on motions by the Insurers for review of the Order (Doc. # 374) by which the Magistrate Judge denied the Insurers' request for a six-month extension of discovery deadlines (Doc. ## 380, 381).[2]  Those motions are also denied.

Finally, Bunge's pending motion for an expedited ruling on the Insurers' objections to the Magistrate Judge's discovery order (Doc. # 382) is denied as moot.

---

[1]Document 340 is the motion by Century Indemnity Company, successor to Insurance Company of North America ("Century").  Document 344 is the motion by New Hampshire Insurance Company ("New Hampshire").  Document 345 is the motion by plaintiffs United States Fire Insurance Company and North River Insurance Company ("plaintiffs").  Document 346 is the motion by Travelers Casualty and Surety Company, f/k/a Aetna Casualty and Surety Company ("Travelers").  Document 347 is the motion by Continental Insurance Company, successor to Fidelity and Casualty Company of New York ("F&C").  Document 348 is the motion by Navigators Management Company, Inc.; Utica Mutual Insurance Company; Pennsylvania Lumbermens Mutual Insurance Company; Republic Insurance Company; Insurance Corporation of New York; Progressive Casualty Insurance Company; Navigators Insurance Company; and Fairmont Specialty Insurance Company (collectively "the Excess Insurers").  All of the other movants have joined in and adopted the arguments in F&C's motion, and some have offered additional arguments as well.  The movants are collectively referred to as "the Insurers".

[2]Document 380 is the motion by plaintiffs, Travelers, Century, New Hampshire, and the Excess Insurers.  Document 381 is the motion by F&C.

## I.      Standard of Review

With respect to a magistrate judge's order relating to nondispositive pretrial matters, the district court does not conduct a de novo review; rather, the court applies a more deferential standard by which the moving party must show that the magistrate judge's order is "clearly erroneous or contrary to law." *First Union Mortgage Corp. v. Smith*, 229 F.3d 992, 995 (10th Cir. 2000) (quoting *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1461-62 (10th Cir. 1988)); 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); D. Kan. Rule 72.1.4(a).   The clearly erroneous standard "requires that the reviewing court affirm unless it on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Ocelot Oil*, 847 F.2d at 1464 (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)).

In reviewing a magistrate judge's nondispositive ruling, this Court does not consider matters not placed before that judge.  *See First Sav. Bank, F.S.B. v. U.S. Bancorp*, 184 F.R.D. 363, 366-67 (D. Kan. 1998) (court will not consider evidence not submitted to magistrate judge); *City of Wichita v. Aero Holdings, Inc.*, 192 F.R.D. 300, 302 (D. Kan. 2000) (review of a magistrate judge's order is "not a de novo review permitting a second shot . . . based on new arguments").

## II.      Motion for Review of Magistrate Judge's Discovery Order

By its May 25, 2007, order, the Magistrate Judge compelled the Insurers to produce reinsurance agreements applying to Bunge's claims; communications with reinsurers regarding the three Bunge sites; documents relating to loss reserves established for Bunge's claims; claims handling manuals; and document retention policies.  *See* Mag. J. Order at 31.[3]  The Magistrate Judge also prohibited the parties from disclosing or using the documents or information outside this litigation.  *See id.* at 32.

A.   <u>Reinsurance Agreements</u>

The Insurers first object to the Magistrate Judge's ruling requiring the production of any applicable reinsurance agreements.  The Magistrate Judge ruled that production of such agreements is required by Fed. Rule Civ. P. 26(a)(1)(D).  That rule requires the production of

> any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment.

*Id.*  The Court agrees that production of reinsurance agreements is required by the rule, and that the Magistrate Judge's order with respect to such agreements is not clearly erroneous or contrary to law.

The Insurers argue that their reinsurance agreements are irrelevant.  The rule is

---

[3]The portion of the order regarding claims manuals applied only to plaintiffs, F&C, Travelers, and Fairmont.  The portion of the order regarding document retention policies applied only to plaintiffs and F&C.  *See* Mag. J. Order at 31.

4

absolute, however, and does not require any showing of relevance. *See, e.g.*, *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Continental Illinois Corp.*, 116 F.R.D. 78, 83-84 (N.D. Ill. 1987) (reinsurance agreements discoverable under the rule even if they would not be otherwise discoverable). The Insurers have not cited any authority providing that some insurance agreements may be shielded from production under the rule, and the Court rejects any such argument.

The Insurers also argue that reinsurance agreements are not subject to Rule 26(a)(1)(D). They list many ways in which such agreements differ from regular insurance policies, note that a reinsurer is not in privity with and owes no obligation to the underlying insured, and argue that reinsurance agreements are more in the nature of indemnification agreements. The Insurers also argue that production of reinsurance agreements would not serve the rule's purpose of facilitating the parties' appraisal of the case because the claimant is not entitled to proceeds directly from a reinsurer. Again, however, the Insurers have cited no cases making this distinction under the rule.

The Court agrees with the reasoning of the court in *National Union*. That court noted that because reinsurers "carry[] on an insurance business" and "may be liable . . . to indemnify [insurers] for payments made to satisfy the judgment," reinsurance agreements fall within the plain language of the rule. *See National Union*, 116 F.R.D. at 84. Furthermore, as the *National Union* court concluded, the fact that reinsurers would pay the Insurers and not the insured directly is irrelevant, and such an argument is disingenuous in light of the fact that the same usually holds true for regular insurance

5

policies, which are undoubtedly subject to the rule.  *See id.* at 84 & n.13.

Finally, the Court rejects the Insurers' argument based on the advisory committee's notes to the rule.  Those comments do not exempt indemnification agreements with reinsurers.  The comments state that the rule "makes no change in existing law on discovery of indemnity agreements *other than insurance agreements by persons carrying on an insurance business*."  Fed. R. Civ. P. 26, 1970 adv. note, subd. (b)(2) (the former location of the present Rule 26(a)(1)(D)) (emphasis added). Reinsurers carry on an insurance business.  Thus, although other indemnification agreements may not be implicated by the rule, reinsurance agreements clearly are.

Moreover, determining what funds are available for satisfaction of a judgment satisfies the rule's purpose of enabling counsel "for both sides to make the same realistic appraisal of the case, so that settlement and litigation strategy are based on knowledge and not speculation."  *Id.*  Thus, production of reinsurance agreements comports with the rule's purpose as much as the production of any insurance agreement does.

Finally, the Insurers argue that their reinsurance agreements are confidential.  The Insurers have not shown how an agreement's confidentiality may overcome Rule 26(a)(1)(D), however, and the Magistrate Judge did not clearly err or act contrary to law in compelling the production of the reinsurance agreements subject to his protective order.

### B.     Communications with Reinsurers

The Insurers object to the Magistrate Judge's order compelling the production of

6

communications with reinsurers. The Magistrate Judge overruled the Insurers' relevance objection, ruling that such communications could lead to the discovery of admissible evidence relating to the Insurers' affirmative defense of late notice; Bunge's bad faith claims, which relate to the Insurers' handling and investigation of Bunge's insurance claims; the Insurers' assessments of their potential liability or exposure; admissions by the Insurers regarding coverage; and the existence and terms of lost policies. *See* Mag. J. Order at 12-13. The Magistrate Judge further overruled the Insurers' objection based on the confidential and proprietary nature of the information. *See id.* at 13-14.[4] The Court concludes that these rulings are not clearly erroneous or contrary to law.

The Insurers argue that reinsurance information is not relevant, and they cite cases in which such information was protected from discovery. Other courts, however, have compelled the discovery of reinsurance information, on the basis that such information may lead to the discovery of admissible evidence relevant to particular claims and defenses asserted in the case. *See, e.g.*, *National Union*, 116 F.R.D. at 82-83. There is certainly no binding precedent absolutely prohibiting the discovery of reinsurance information. One court summed up the caselaw nicely:

> Whether communications between cedents and their reinsurers are discoverable appears to be dependent on the nature of the issues to which they are alleged to be relevant. . . . [C]ourts appear reluctant to permit discovery of communications between cedents and their reinsurers for the

---

[4]The Magistrate Judge also overruled objections relating to overbreadth, ambiguity, undue burden, and public interest. *See* Mag. J. Order at 14-16. Those rulings have not been challenged by the Insurers.

purpose of establishing the proper interpretation of an unambiguous insurance policy, but are more willing to permit discovery for other purposes, such as defending against an insurer's effort to rescind a policy; to deny claims for late notice; to reconstruct a lost policy; or as extrinsic evidence of an ambiguous policy provision.

*Medmarc Cas. Ins. Co. v. Arrow Int'l, Inc.*, 2002 WL 1870452, at *3-4 (E.D. Pa. July 29, 2002).  The Court agrees with the Magistrate Judge that the discoverability of such information should be decided on a case-by-case basis, considering the particular claims and defenses asserted by the parties.[5]

Given the broad discovery standard applicable under the rules, the Court concludes that the Magistrate Judge did not clearly err or act contrary to law in reviewing the issues raised in this case and ruling that reinsurance information is discoverable in light of those issues.  The parties' claims and defenses go beyond the mere issue of policy interpretation.  The Insurers may well have discussed various positions or issues with their reinsurers.  The timing and content of those communications could readily lead to the discovery of admissible evidence regarding the Insurers' handling and investigation of Bunge's claims or Bunge's notice to the Insurers.  Such communications could also relate to the allegedly lost policies.

---

[5]Even cases cited by the Insurers support this conclusion.  *See Country Life Ins. Co. v. St. Paul Surplus Lines Ins. Co.*, 2005 WL 3690565, at *10 (C.D. Ill. Jan. 31, 2005) (quoting *Medmarc* and basing decision on particular issues in case); *Maryland Cas. Co. v. W.R. Grace & Co.-Conn.*, 1998 WL 171501, at *2 (S.D.N.Y. Apr. 10, 1998) (reinsurance notice appears relevant); *Independent Petrochemical Corp. v. Aetna Cas. & Sur. Co.*, 1987 WL 8512, at *2 (D.D.C. Mar. 9, 1987) (noting split in cases allowing and disallowing discovery of reinsurance information).

Other arguments asserted by the Insurers in support of their relevance objection lack merit and do not support reversal of the Magistrate Judge's order. First, the Insurers argue that the scope of the Magistrate Judge's order should be limited to those documents actually relevant to the issues cited in the order; the Insurers do not get to make that relevance determination themselves, however, and the Magistrate Judge properly compelled production of a category of documents that may contain information leading to the discovery of admissible evidence. Second, F&C's suggestion that the undue cost and burden of production outweigh the relevance rings hollow in light of its statement that it has no responsive documents to produce; at any rate, the Insurers have not made the required showing with respect to the actual burden of producing reinsurance communications. Third, Bunge's own discovery responses to requests for documents relating to its bad faith claim is irrelevant to the Court's relevance analysis. Fourth, the fact that the Insurers have already produced numerous documents relating to the issues of bad faith and notice does not provide immunity from the production of additional discoverable documents.

The Insurers also renew their objection based on the confidential and proprietary nature of reinsurance information. The Court agrees with the Magistrate Judge, however, that such information does not thereby become privileged. The Court concludes that the Magistrate Judge did not clearly err or act contrary to law in ruling that such concerns do not shield the information from discovery in this case and in addressing those concerns by way of a protective order.

9

C.    Loss Reserve Information

The Insurers object to the Magistrate Judge's ruling compelling the production of loss reserve information.  The Magistrate Judge overruled the Insurers' relevance objection, ruling that loss reserves and the timing of their establishment could be relevant to the Insurers' positions on liability, their investigations and coverage determinations, and lost policies.  *See* Mag. J. Order at 18-19.  The Magistrate Judge also ruled that the Insurers had failed to make the required showing in support of their work product objection.  *See id.* at 24.[6]  The Court concludes that these rulings are not clearly erroneous or contrary to law.

In arguing that loss reserve information is not relevant, the Insurers assert (without reference to supporting evidence) that their loss reserves, which are required by law, are not evaluations of the particular claims, but instead depend on various assumptions and business considerations.  The Insurers cite cases in which the production of loss reserve information was not required.

Just as it did with respect to reinsurance information, however, the Court agrees with the Magistrate Judge that a number of cases have allowed such discovery, and that the question should be decided on a case-by-case basis with reference to the particular issues present in the case.  *See, e.g.*, *Culbertson v. Shelter Mut. Ins. Co.*, 1998 WL

_____

[6]The Magistrate Judge also overruled objections relating to overbreadth, ambiguity, undue burden, and public interest.  *See* Mag. J. Order at 25.  Those rulings have not been challenged by the Insurers.

10

743592, at *1 (E.D. La. Oct. 21, 1998) (choosing to follow line of cases holding that reserve information is discoverable where a claim of bad faith is asserted); *see also* Mag. J. Order at 20 n.36 (citing cases).  The Court concludes in this case that the Magistrate Judge did not clearly err in analyzing the issues present and determining that loss reserve information may lead to the discovery of admissible evidence on those issues as identified in the Magistrate Judge's order.

Insurer F&C states that it has already produced its loss reserve information, but with the actual reserve amounts redacted.  F&C asserts therefore that the only real issue is whether the loss reserve amounts themselves are relevant.  F&C argues that information relevant to any bad faith or late notice issue is apparent from the fact and timing of the reserves, without reference to the actual amounts of those reserves.[7]  F&C further argues that the cases cited by the Magistrate Judge and Bunge do not specifically find the actual reserve amounts to be relevant in permitting discovery of reserve information.

First, it does not appear that the Insurers asserted any such objection or argument relating specifically to the reserve amounts in the proceedings before the Magistrate Judge.  Accordingly, the issue is not properly before this Court.

Moreover, the Court concludes that the Magistrate Judge did not clearly err in

---

[7]The Court does not agree that the Magistrate Judge did not find reserve amounts specifically to be relevant.  The Magistrate Judge found that "information regarding money the Insurers set aside to cover future liabilities to Bunge," as well as the timing of the reserves, to be relevant.  *See* Mag. J. Order at 18.

failing to allow the reserve amounts to be redacted.  Contrary to F&C's assertion, courts *have* specifically found the amounts of loss reserves to be discoverable.  For instance, in *Savoy v. Richard A. Carrier Trucking, Inc.*, 176 F.R.D. 10 (D. Mass. 1997), the court noted that "the date and *amount* of the reserve, *as well as any modification of that amount*, may well relate to [the insurer's] determination of its potential risk in this matter and, hence, reveal its view on liability."  *Id.* at 12 (emphasis added).  The court in *North River Ins. Co. v. Greater New York Mut. Ins. Co.*, 872 F. Supp. 1411 (E.D. Pa. 1995), made the same point in allowing such discovery:

> The reserves, of course, must have some relationship to the insurer's estimation of the insured's potential liability.  Otherwise, the setting aside of reserves would serve little, if any, purpose.

*Id.* at 1412.  Other courts have similarly noted that reserves are undoubtedly affected by circumstances relating to the particular claim, including the insured's belief concerning coverage and its estimate of its liability.  *See Bernstein v. Travelers Ins. Co.*, 447 F. Supp. 2d 1100, 1106 (N.D. Cal. 2006); *Nicholas v. Bituminous Cas. Corp.*, 235 F.R.D. 325, 331 (N.D. W. Va. 2006).

The Court agrees with these courts that the actual amounts of the Insurers' loss reserves—including any changes to those amounts—could, at the least, lead to admissible evidence relating to the Insurers' own beliefs about coverage and their liability, as well as their good or bad faith in handling and investigating Bunge's claims. The Insurers' arguments that reserves are not true evaluations of potential liability, based on the manner in which reserves are allegedly set, may go to the probative value or even

the eventual admissibility of such information, particularly as it relates to any attempt by Bunge to establish an admission of liability by the Insurers. "The fact that information might suffer some probative infirmities for some purposes, however, is not a sufficient ground for concluding that it is not discoverable." *Bernstein*, 447 F. Supp. 2d at 1105; *see also Nicholas*, 235 F.R.D. at 331 (arguments concerning basis for reserves "relate to the weight of the evidence and not its relevancy for purposes of discovery"). The Insurers remain free to argue at trial that reserve amounts should be inadmissible under Fed. R. Evid. 403. At this stage of discovery, however, the relevance inquiry is broad enough to allow discovery of those amounts. *See North River*, 872 F. Supp. at 1412 (questions of evidence, including admissibility under Rule 403, are not before the court when deciding discoverability of loss reserve amounts).

Finally, the Court rejects the Insurers' argument that loss reserve information generally is protected by the work product doctrine. The Magistrate Judge did not clearly err in ruling that the Insurers failed to provide any evidence or details about the setting of their loss reserves to justify invocation of the doctrine.

D.    Post-Lawsuit Reinsurance and Reserve Documents

The Excess Insurers argue that the Magistrate Judge erred in compelling the production of reinsurance and loss reserve information to the extent that the Magistrate Judge did not carve out an exception for documents created after the commencement of the present lawsuit. The Excess Insurers argue that such documents are necessarily protected by the work product doctrine and the attorney-client privilege. This distinction

13

between pre- and post-lawsuit documents was not asserted before the Magistrate Judge, however, and as noted above, this Court will not consider new objections at this time.

Moreover, the Excess Insurers have utterly failed to establish that every document generated after the lawsuit's filing relating to resinsurance or reserves is work product or an attorney-client communication. The Excess Insurers have pointed to no general privilege that exists between insurers and reinsurers, for example. The Excess Insurers' reliance on the Scheduling Order is misguided. The cited provision states that "[p]arties are not required to place on a privilege log any privileged communication or work product written or received by a party or its counsel after the commencement of this litigation." Scheduling Order ¶ 3.f (Doc. # 123). Thus, the Scheduling Order does *not* provide that all post-commencement documents necessarily constitute privileged communications or work product, but only that if such a document is in fact privileged, it need not be logged. Post-commencement documents relating to reinsurance or reserves remain just as discoverable as any other post-commencement correspondence with third parties or internal company memoranda.

Accordingly, the Magistrate Judge did not clearly err in failing to except post-commencement documents from his ruling regarding reinsurance and reserve information. There is no basis for a blanket protection of such documents from discovery. Moreover, the application of the work product doctrine or attorney-client privilege to any particular document is not before the Court, and any such issue (and the issue of whether the assertion of such privilege has been waived) must be brought first

14

before the Magistrate Judge.

###### E.   Claims Manuals and Document Retention Policies

In an introductory footnote in its brief (which was adopted by all of the other Insurers), F&C states that it does not challenge that Magistrate Judge's order as it relates to the production of claims handling manuals and document retention policies "except to the extent that it fails to set a time frame." F&C argues that it should be required to produce such documents only to the extent that they were in force during the periods when claims were made and when lost policies were allegedly in effect, respectively. To the extent that F&C has properly asserted this objection to the Magistrate Judge's ruling in this fashion, the Court rejects this argument.

With respect to claims handling materials, the Magistrate Judge accepted Bunge's arguments that such information not only was relevant to whether claims were properly handled, but also could reveal the Insurers' guidelines for interpreting policy language or demonstrate how the Insurers' positions in this litigation are inconsistent with previous coverage decisions. *See* Mag. J. Order at 28. Thus, even manuals for periods outside the time that Bunge's claims were handled could be relevant. Moreover, the timing and extent of any changes to the Insurers' procedures regarding claims handling or document retention could lead to the discovery of admissible evidence relating to the Insurers' alleged bad faith in responding to Bunge's claims. Accordingly, the Magistrate Judge did not clearly err in failing to place temporal limitations on the production of these materials.

15

The Court also rejects Fairmont's argument that, because it had no notice of any claims by Bunge until the lawsuit was commenced, it did not handle those claims in the ordinary sense, and its claims handling manuals must therefore be irrelevant. Again, the Magistrate Judge found that the manuals could be relevant for reasons unrelated to the actual handling of Bunge's claims, and therefore Fairmont's manuals remain discoverable—even if such a question of fact (Fairmont's lack of notice) could be deemed established at this juncture. The Magistrate Judge did not clearly err or act contrary to law in rejecting this argument by Fairmont.

F.    Magistrate Judge's Protective Order

Finally, the Insurers argue that the Magistrate Judge's order, by which the parties are prohibited from using or disclosing these documents outside the litigation, does not sufficiently address their confidentiality concerns because the documents will nonetheless be disclosed to each other, and thus to their competitors. As noted above, however, the Court agrees with the Magistrate Judge that such concerns are not so overwhelming as to make the documents immune from discovery. Although the Insurers suggest that a more restricted, "attorneys-eyes-only" designation might be appropriate, such a modification of the protective order should first be addressed to the Magistrate Judge. The Court cannot conclude that the Magistrate Judge clearly erred or acted contrary to law in attempting to address the Insurers' concerns about confidentiality.

**III.    Motion for Review of Magistrate Judge's Scheduling Order**

16

On July 2, 2007, the Magistrate Judge amended the scheduling order in the case by extending discovery and expert deadlines by one month (Doc. # 374). The Insurers now challenge the Magistrate Judge's refusal to extend discovery by six months, until March 31, 2008, as they requested. The Court concludes that the Magistrate Judge did not clearly err or act contrary to law in denying such a lengthy extension.

The Insurers rely heavily on the procedural history of this case. Specifically, the Insurers note that, although the case was commenced in May 2005, Bunge was not granted leave to add claims relating to two of its sites until October 2006. Thus, the Insurers argue that discovery regarding those sites could not take place until then. The Insurers further argue that locating documents and witnesses to reconstruct the entire history of those sites has been difficult, requiring the use of investigators and third-party discovery.

The Insurers' recitation of the case's procedural history is incomplete, however. The issue of coverage concerning the other two sites was actually introduced into the case in July 2005, when Travelers filed a cross-claim relating to those sites. In April 2006, the Court denied Bunge's motion to dismiss or sever claims relating to the two additional sites, and Bunge eventually sought and received leave to add its own claims for damages relating to those sites. By the time of Bunge's motion in June 2006, however, the parties had already agreed to produce documents and complete Rule 26(a)(1) discovery relating to those sites by August 1, 2006. Accordingly, the Insurers' actual period of time in which to have prepared their cases with respect to the two

17

additional sites has been much longer than they would have the Court believe.

On June 27, 2006, the Magistrate Judge granted the parties' request for a three-month extension of the discovery deadline to March 30, 2007.  In December 2006, Bunge requested an additional one-month extension for discovery, while the Insurers requested a six-month extension to September 30, 2007.  The Magistrate Judge granted the Insurers' request, but he stated that "[n]o further changes in this schedule will be made unless extraordinary circumstances justify the change."  Order of Dec. 28, 2006 (Doc. # 285).  The same grounds asserted now—the difficulty in locating witnesses and documents, the need to reconstruct the entire history of the two new sites—were known to the Insurers in December 2006 and argued in support of their request for an extension of discovery to September 2007.  The Court has not been persuaded that these same difficulties, which are present in many complex cases, present such extraordinary circumstances that the Magistrate Judge was required to give the Insurers six more months than they had previously requested.

Nor is the Court persuaded by the Insurers' argument that Bunge has hindered their attempt to complete their discovery in a timely fashion.  Any complaints about Bunge's responses to discovery requests should have been asserted by proper motion. Nor does the timing of Bunge's own discovery efforts mandate an additional extension for the Insurers.  In sum, the Insurers have not demonstrated that the Magistrate Judge clearly erred or acted contrary to law in failing to grant yet another lengthy discovery extension.  The Insurers' motion pursuant to Fed. R. Civ. P. 72(a) and Local Rule

72.1.4(a) is denied.

IT IS THEREFORE ORDERED BY THE COURT THAT the various motions for review of the Magistrate Judge's order regarding discovery (Doc. ## 340, 344, 345, 346, 347, 348) are denied, and the Insurers are ordered to produce documents in accordance with the Magistrate Judge's order on or before July 27, 2007.

IT IS FURTHER ORDERED THAT the motions for review of the Magistrate Judge's order regarding scheduling (Doc. ## 380, 381) are denied.

IT IS FURTHER ORDERED THAT Bunge's pending motion for an expedited ruling on the Insurers' objections to the Magistrate Judge's discovery order (Doc. # 382) is denied as moot.

IT IS SO ORDERED.

Dated this 23rd day of July, 2007, in Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge