DJW/sr

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

UNITED STATES FIRE INSURANCE
COMPANY, et at.,

                **Plaintiffs,**

     **v.**                                      **Case No:  05-cv-2192-JWL-DJW**

BUNGE NORTH AMERICA, INC., et al.,

                **Defendants,**

     **v.**

THE FIDELITY AND CASUALTY
COMPANY OF NEW YORK, et al.,

        **Additional Cross-Claim Defendants.**

## MEMORANDUM AND ORDER

Before the Court is the Motion of Continental Insurance Company, as Successor by Merger to the Fidelity and Casualty Company of New York, for an Order (i) Deeming the Discovery Responses of Defendant Bunge North America, Inc. Admitted, (ii) Compelling Disclosure, and (iii) Awarding Costs and Sanctions Pursuant to FRCP 36-37 (doc. 635) (the "Motion to Compel").

The Motion to Compel covers three separate discovery requests served on Defendant Bunge North America, Inc. ("Bunge") by Cross-Claim Defendant Continental Insurance Company, as successor by merger to the Fidelity & Casualty Company of New York ("F&C").  Pursuant to Fed.R.Civ.P. 36 and 37, F&C seeks an order from this Court (1) deeming admitted F&C's Requests for Admissions served on Bunge on December 28, 2007 (the "12/28/07 Requests for Admissions") or, alternatively, compelling Bunge to serve amended responses to the 12/28/07 Requests for

Admissions, (2) compelling Bunge to revise its responses to F&C's Interrogatories in F&C's combined Interrogatory and Document Requests served on Bunge on December 28, 2007 (the "12/28/07 Interrogatories"), (3) compelling Bunge to supplement its responses to F&C's Document Requests served on Bunge on January 10, 2008 (the "1/10/08 Document Requests"), and further compelling Bunge to specify precisely what it received from Marsh & McLennan Companies, Inc. ("Marsh") and how that universe of documents relates to the universe of documents Bunge previously represented it received from Marsh, and (4) awarding such costs F&C incurs together with sanctions.

Bunge argues that F&C has failed to comply with the conference requirements of Fed.R.Civ.P. 37 and D.Kan. Rule 37.2, opposes the Motion to Compel on its merits, and seeks an order from this Court requiring F&C to pay Bunge's costs for responding to the Motion to Compel.

For the reasons stated below, the Motion to Compel is granted in part and denied in part.

## I. CONFERENCE REQUIREMENTS

Before considering the merits of F&C's Motion to Compel, as a procedural matter the Court must determine whether F&C has complied with the conference requirements of the Federal Rules of Civil Procedure and the Rules of Practice and Procedure for the United States District Court for the District of Kansas.

### A.      Duty to Confer

Fed.R.Civ.P. 37 (a)(1) provides in pertinent part, "[A] party may move for an order compelling disclosure or discovery.  The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or

discovery in an effort to obtain it without court action."[1]   Under Fed.R.Civ.P. 37, the movant is required "to make a good faith attempt to resolve the discovery dispute [] before filing a motion to compel discovery responses."[2]  In addition, D.Kan. Rule 37.2 requires the movant to confer or make a "reasonable effort to confer with opposing counsel concerning the matter in dispute prior to the filing of the motion."[3]  D.Kan. Rule 37.2 makes it clear that "[a] 'reasonable effort to confer' means more than mailing or faxing a letter to the opposing party.  It requires that the parties in good faith converse, confer, compare views, consult and deliberate, or in good faith attempt to do so."[4]

The purpose of Fed.R.Civ.P. 37(a)(1) and D.Kan. Rule 37.2 is to "encourage resolving discovery disputes without judicial involvement."[5]  In determining whether the moving party has satisfied its "meet and confer" duty, the Court "looks beyond the sheer quantity of contacts.  It examines their quality as well."[6]  The court in *Cotracom Commodity Trading Co. v. Seaboard Corp.* summarized the analysis of the moving party's "meet and confer" attempts well:

> When the dispute involves objections to requested discovery, parties do not satisfy the conference requirements simply by requesting or demanding compliance with the requests for discovery.  The parties need to address and discuss the propriety of asserted objections.  They must deliberate, confer, converse, compare views, or consult with a view to resolve the dispute without judicial intervention.  They must

---

[1] Fed.R.Civ.P. 37(a)(1) (2008).

[2] *Lohmann & Rauscher, Inc. v. YKK (U.S.A.), Inc.*, No. Civ. A. 05-2369-JWL, 2007 WL 677726, at *2 (D.Kan. March 2, 2007).

[3] D.Kan. Rule 37.2 (2008).

[4] *Id.*

[5] *Cotracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 456, 459 (D. Kan. 1999); *see also VNA Plus, Inc. v. Apria Healthcare Group, Inc.*, No. Civ. A. 98-2138-KHV, 1999 WL 386949, at *1 (D.Kan. June 8, 1999).

[6] *Cotracom*, 189 F.R.D. at 459.

make genuine efforts to resolve the dispute by determining precisely what the requesting party is actually seeking; what responsive documents or information the discovering party is reasonably capable of producing; and what specific, genuine objections or other issues, if any, cannot be resolved without judicial intervention.[7]

In analyzing the conference requirements, the Court will also consider whether or not additional attempts to "meet and confer" would be futile.[8]  For example, in *Lohmann & Rauscher, Inc. v. YKK (U.S.A.), Inc.*, the moving party (plaintiff) sent a single e-mail and received a single response by e-mail from the defendant regarding the discovery dispute.[9]  The plaintiff then filed its motion to compel.  In arguing that the duty to confer was satisfied, the plaintiff argued that the history of the dispute showed the futility of any further conference with the non-moving party.  The *Lohmann* court rejected the plaintiff's futility argument, explaining:

> Given the explicit requirements for counsel to confer, as set forth in Fed.R.Civ.P. 37 and D.Kan. Rule 37.2, the Court cannot find that plaintiff adequately complied.  A single e-mail and a single response by e-mail hardly meets the requirement to "in good faith converse, confer, compare views, consult and deliberate, or in good faith attempt to do so."[10]

## B.      Efforts to Confer

F&C served three sets of discovery requests on Bunge: (a) the 12/28/07 Requests for Admissions, (b) the 12/28/07 Interrogatories, and (c) the 1/10/08 Document Requests.   F&C's Certification of Compliance with FRCP 37 and Local Rule 37.2 (doc. 635) (the "Certification") filed

---

[7]  *Id.*

[8]  *See Lohmann*, 2007 WL 677726.

[9]  *See id.*

[10]  *Id.*, at *2 (*quoting* D.Kan. Rule 37.2); *accord Cont'l Coal, Inc. v. Cunningham*, No. Civ. A. 06-2122-KHV, 2007 WL 4241848, at *2 (D.Kan. Nov. 28, 2007) (finding that parties had adequately conferred after exchanging a series of e-mails discussing the applicable law and determining that counsel held "drastically different views" regarding which documents were discoverable).

contemporaneously with the Motion to Compel states that counsel for F&C and counsel for Bunge communicated at various times regarding F&C's issues with Bunge's responses to these three discovery requests.

According to F&C's Certification, these various communications include several e-mails exchanged between February 20, 2008 and February 29, 2008, wherein counsel for the parties discussed the documents produced by Bunge in response to F&C's 1/10/08 Document Requests. This exchange of e-mails was followed by F&C's "golden rule" letter on March 1, 2008 (the "3/1/08 Golden Rule Letter").  F&C's 3/1/08 Golden Rule Letter "continued" the discussion regarding the documents produced by Bunge in response to F&C's 1/10/08 Document Requests and, in addition, identified numerous issues F&C had with Bunge's responses to the 12/28/07 Requests for Admissions and the 12/28/07 Interrogatories, some of which F&C now raises in its Motion to Compel.

In response to F&C's Golden Rule Letter, on March 6, 2008, counsel for Bunge sent a letter to counsel for F&C (the "3/6/08 Response Letter").  In the 3/6/08 Response Letter, counsel for Bunge stated, "Bunge respectfully disagrees with [F&C's] statement that 'Bunge is in default of its discovery obligations' or that Bunge's discovery responses are in any way deficient."[11]  Counsel for Bunge, in its 3/6/08 Response Letter, also addressed every discovery issue raised by F&C in the 3/1/08 Golden Rule Letter.  In addition, counsel for Bunge offered to amend certain responses, discussed the possibility of stipulating to the content of certain documents, explained the basis for its objections and responses, agreed to produce additional documents, and requested to meet and confer if counsel for F&C had any remaining concerns.  Further, in connection with any issues

---

[11] 3/6/08 Response Letter (doc. 635-9), at p. 1.

concerning Bunge's responses to F&C's 1/10/08 Document Requests, counsel for Bunge affirmatively stated, "Bunge has fully responded to F&C's discovery request seeking 'all documents obtained by Bunge from Marsh.'"[12]   Counsel for Bunge closed the 3/6/08 Response Letter by claiming that F&C's 3/1/08 Golden Rule Letter, in and of itself, was not sufficient to satisfy the "meet and confer" requirement of D.Kan. Rule 37.2.

Counsel for F&C responded to Bunge's 3/6/08 Response Letter by letter on March 7, 2008 (the "3/7/08 F&C Letter").  In the 3/7/08 F&C Letter, counsel for F&C claimed, "It is clear from your [3/6/08 Response Letter] that Bunge refuses to reconsider its position with respect to each of the issues [] raised in [the][3/1/08 Golden Rule Letter] with the sole exception of the materials Bunge received from Marsh."[13] Counsel for F&C further claimed that he had satisfied the "meet and confer" requirements of D.Kan. Rule 37.2 and requested that counsel for Bunge contact him if counsel for Bunge believed there was anything else that they should discuss.

After the 3/7/08 F&C Letter, counsel for F&C and counsel for Bunge exchanged a series of e-mails.  These e-mails primarily discussed whether or not F&C satisfied the duty to "meet and confer" under D.Kan. Rule 37.2.  F&C then filed its Motion to Compel on March 11, 2008.

### C.    The Parties' Contentions

Bunge argues that F&C's single 3/1/08 Golden Rule Letter and Bunge's 3/6/08 Response Letter are insufficient to satisfy the conference requirements of Fed.R.Civ.P. 37 and D.Kan. Rule 37.2.  Bunge contends that all correspondence between Bunge and F&C after Bunge's 3/6/08 Response Letter "in no way address the substance of Bunge's discovery responses" and instead

---

[12] *Id.*, at p. 5.

[13] 3/7/08 F&C Letter (doc. 648-2), at p. 1.

6

focus on whether counsel for F&C satisfied the conference requirements.[14]  In addition, Bunge argues that the e-mails exchanged by counsel for F&C and counsel for Bunge between February 20, 2008 and February 29, 2008 do not satisfy the conference requirements because these e-mails only address the issue of supplementing Bunge's responses to F&C's 1/10/08 Document Requests and the e-mails were not characterized as efforts to "meet and confer," but rather simply reiterated F&C's demand that Bunge produce all documents it received from Marsh.  Bunge also argues that counsel for F&C refused Bunge's requests to discuss the discovery issues and failed to pick up a telephone and call counsel for Bunge to discuss the discovery issues.

F&C argues that D.Kan. Rule 37.2 "does not require that the moving party continue to attempt to 'meet and confer' even where doing so would be futile."[15]  F&C asserts that Bunge's 3/6/08 Response Letter "makes it clear that the parties were at an impasse at that point in time and that no additional 'meet and confer' sessions could resolve the issues brought to the Court's attention in" F&C's Motion to Compel.[16]  In addition, F&C contends that the "repeated attempts" to resolve the discovery issues now raised in its Motion to Compel, including the e-mails exchanged by the parties after Bunge's 3/6/08 Response Letter, satisfy the conference requirements.  F&C also contends that the conference requirements do not impose a duty upon the moving party to "meet and confer" by telephone.

**D.    Analysis**

---

[14] Bunge's Opposition to F&C's Motion for an Order Deeming Certain Discovery Responses of Bunge Admitted, Compelling Disclosure and Awarding Costs and Sanctions (doc. 648), p. 6.

[15] Reply to Opposition of Defendant Bunge North America, Inc. to Motion of Cross-Claim Defendant Continental Insurance Company, as Successor by Merger to the Fidelity and Casualty Company of New York, to Compel Discovery and for Related Relief (doc. 675), p. 3.

[16] *Id.*

The Court is persuaded by F&C's arguments and finds that counsel for F&C conferred and made reasonable efforts to confer with counsel for Bunge before filing its Motion to Compel.   In determining whether or not F&C has satisfied the conference requirements under Fed.R.Civ.P. 37 and D.Kan. Rule 37.2, the Court reviews all of the surrounding circumstances.[17]  The Court has reviewed the Certification, the relevant correspondence exchanged between the parties, and the parties' contentions regarding the discovery issues raised in the Motion to Compel.

The evidence before the Court shows that counsel for F&C did more than mail or fax a letter to counsel for Bunge before filing the Motion to Compel.  Rather, the various e-mails and letters exchanged between counsel for the parties demonstrate that the discovery disputes were discussed at length. Further, despite the repeated attempts by counsel for the parties to resolve the discovery disputes, it appears that counsel for the parties were at an impasse and that additional attempts to resolve the discovery disputes would have been futile.  In addition, the conference requirements set forth in Fed.R.Civ.P. 37 and D.Kan. 37.2 do not dictate the method of communication to be used by the parties.[18]  Thus, the fact that counsel for the parties did not communicate by telephone does not mean that F&C failed its duty to confer.  Accordingly, the Court finds that F&C has satisfied the conference requirements set forth in Fed.R.Civ.P. 37 and D.Kan. Rule 37.2.

## II. DISCOVERY REQUESTS

Having determined that F&C has satisfied the conference requirements set forth in Fed.R.Civ.P. 37 and D.Kan. Rule 37.2, the Court will address the specific discovery requests and objections at issue in this case.

---

[17] *See Wilbert v. Promotional Resources, Inc.*, No. Civ. A. 98-2370-GTV, 1999 WL 760524, at *2 (D.Kan. Sept. 21, 1999).

[18] *See id*. (parties not required to confer by telephone to satisfy conference requirements).

A.    **12/28/07 Requests for Admissions**

F&C asks the Court to deem admitted, or in the alternative, compel Bunge to amend its responses to five of F&C's 12/28/07 Requests for Admissions: Request Nos. 5, 8, 19, 21, and 32. Fed.R.Civ.P. 36 addresses requests for admissions and provides in relevant part:

> A party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of . . . [certain] matters . . .. If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest.[19]

A request for admission should be simple and concise so as to allow the responding party to admit or deny the request "with an absolute minimum explanation or qualification."[20] In addition, "[a] requesting party should not state 'half a fact,' or 'half-truths' which require the answering party to qualify responses."[21]

F&C argues that Bunge's responses to Request Nos. 5, 8, 19, 21, and 32 fail to meet the requirements of Fed.R.Civ.P. 36 because they are evasive, incomplete, or contain inappropriate "qualifying verbiage," and, consequently, the responses to these requests are insufficient. Bunge argues that its responses to the requests are proper and that Bunge made a good faith effort to completely and accurately respond to each request or to justifiably object to each request.

1.    *Request Nos. 19 and 21 of the 12/28/07 Requests for Admissions*

---

[19] Fed.R.Civ.P. 36(a) (2008).

[20] *Doebele v. Sprint Corp.*, No. Civ. A. 00-2053-KHV, 2001 WL 1718259, at *2 (D.Kan. June 5, 2001) (*citing* 4A Moore's Federal Practice, 2d Ed. 36.05[a] at 35-36); *accord Johnstone v. Cronlund*, 25 F.R.D. 42 (E.D.Pa. 1960).

[21] *Doebele*, 2001 WL 1718259, at *2 (*citing Johnstone v. Cronlund*, 25 F.R.D. 42 (E.D.Pa. 1960); *Knowlton v. Atchison, Topeka & Santa Fe. Ry.*, 11 F.R.D. 62 (W.D.Mo. 1951)).

In Request Nos. 19 and 21 of the 12/28/07 Requests for Admissions, F&C requested that Bunge admit that Bunge did not have certain portions of certain insurance policies. Specifically, Request 19 states:

> For alleged policy No. 15LX1635, Bunge does not have, and has not produced:
> a.    the declarations page;
> b.    the insuring agreements;
> c.    the exclusions;
> d.    the conditions;
> e.    any endorsements;
> f.    the policy jacket; and/or
> g.    any other pages of the policy.[22]

Request No. 21 contains the exact same language except that it references policy No. LX6330976.

Bunge denied Request Nos. 19 and 21 of the 12/28/07 Requests for Admissions, and further stated that Bunge has a copy of Policy No. 15LX1636, which replaced Policy No. 15LX1635 (referenced in Request No. 19) and was subsequently renewed by policy No. LX6330976 (referenced in Request No. 21). Bunge further explained that there was no reason to believe that the terms of any of the policies differed with the exception of the coverage dates, which such dates were recorded in a business record that Bunge has produced.

Request Nos. 19 and 21 do not appear to be so complex or imprecise so as to necessitate the qualified responses provided by Bunge. The requests do not inquire as to whether or not Bunge has possession of or has produced any documents which contain the _terms_ similar to those found in the policies referenced in Request Nos. 19 and 21. Rather, each request asks whether or not Bunge has a specific policy or portions of a specific policy. The Court finds that Request Nos. 19 and 21 are couched in simple and unequivocal terms, which call for unequivocal admissions or denials. Thus,

---

[22] The Continental Insurance Company's (as Successor by Merger to the Fidelity and Casualty Company of New York) Request for Admissions to Bunge North America (doc. 635-2), at ¶ 19.

the Court finds that Bunge's responses to Request Nos. 19 and 21 fail to meet the substance of the requests, and Bunge is ordered to serve amended responses to these requests.

2.    *Request No. 32 of the 12/28/07 Requests for Admissions*

Request No. 32 of the 12/28/07 Requests for Admissions provides: "The document bearing Bates No. Bunge2030086 was not authored by Everett Wooledge."[23]  Bunge denied Request No. 32 and further explained, "The document was written by another, but accurately records a past recollection by Everett Wooledge, and therefore the information in Bunge2030086 could be said to have been 'authored' by Everett Wooledge."[24]

F&C objects to Bunge's response to Request No. 32 of the 12/28/07 Requests for Admissions on the grounds that the response fails to comply with Fed.R.Civ.P. 36 because the term "authored" is unambiguous and the response contains unacceptable "qualifying verbiage."  In response, Bunge argues that the term "authored" is vague and confusing and Bunge, in good faith, needed to explain its response more fully in order to avoid misleading the parties, the Court, and/or a jury.

The Court finds that the term "authored" is vague and ambiguous.  In consulting various definitions of the term "authored," the Court has discovered that while the noun "author" can be said to mean "the writer of a book, article, or other text," using the word "author" as a verb (e.g., The memorandum was authored by John Smith) can be said to mean "to assume responsibility for the

---

[23] *Id.*, at ¶ 32.

[24] Bunge North America, Inc.'s Objections and Responses to the Continental Insurance Company's (as Successor by Merger to the Fidelity and Casualty Company of New York) Request for Admissions (doc. 635-5), at ¶ 32.

content" *or* "to write or construct."[25]  Consequently, Request No. 32 is not precise because the term

"authored" is subject to more than one meaning.  It is not clear from the face of Request No. 32

whether or not the request asks if Everett Wooledge physically wrote the document or if Everett

Wooledge claims responsibility for the content of the document.  Thus, the Court finds that the

qualifying verbiage included within Bunge's response to Request No. 32 was necessary to fairly

respond to the substance of the request.  The Court denies F&C's motion to require Bunge to amend

Request No. 32.

> 3.      *Request Nos. 5 and 8 of the 12/28/07 Requests for Admissions*

Request Nos. 5 and 8 of the 12/28/07 Requests for Admissions concern portions of an

expert report provided by Bunge's expert, JDC Consultants, Inc., dated July 31, 2007 (the

"Report").[26]  Essentially, each request paraphrases a portion of the Report and asks Bunge to

admit to the truth of the paraphrased portion of the Report.  However, a cursory review of the

Report shows that F&C's attempts to paraphrase portions of the Report include modifying words

such as "significant" and "spill" which are not contained in the relevant portions of the Report

and which make the requests imprecise and potentially misleading.  Thus, the Court finds that

the qualifying verbiage included within Bunge's responses to Request Nos. 5 and 8 was

necessary to fairly respond to the substance of the requests.  The Court denies F&C's motion to

require Bunge to amend Request Nos. 5 and 8.

---

[25] *See* Houghton Mifflin Company, *The American Heritage Dictionary of the English Language* (4th ed. 2004), at http://dictionary.reference.com/browse/authored (last visited May 21, 2008) (noting a usage problem with the term "authored" and explaining that the term "authored" is not quite synonymous with the verb "write" because, for example, one can ghostwrite a book for a celebrity, but cannot be said to have authored the book).

[26] *See* JDC Consultants, Inc. Report dated July 31, 2007 (doc. 635-11).

**B.     12/28/07 Interrogatories**

F&C asks the Court to compel Bunge to revise its responses to Interrogatory Nos. 2 and 3 of the 12/28/07 Interrogatories.  Under Fed.R.Civ.P. 33(b), a party responding to an interrogatory must, to the extent the interrogatory is not objected to, answer each interrogatory "fully in writing under oath."  As a general rule, a responding party may not answer an interrogatory by simply referring the requesting party to other documents.[27]  However, "[a]n answering party may affirmatively elect to produce its business records in accordance with Fed.R.Civ.P. 33(d) as its response.  It may also refer to documents attached to its answer to the interrogatories."[28]

F&C's Interrogatory Nos. 2 and 3 inquire as to specific amounts of Bunge's defense costs.  Interrogatory No. 2 asks Bunge to specifically identify the amount and nature of Bunge's defense costs that Bunge has not and does not expect to recover from Travelers Casualty and Surety Company, formerly known as The Aetna Casualty and Surety Company ("St. Paul Travelers").  Interrogatory No. 3 asks Bunge to identify the amount and specific nature of Bunge's defense costs that remain unpaid as a result of F&C's refusal to pay Bunge's defense costs.  Rather than providing F&C with specific amounts in response to Interrogatory Nos. 2 and 3, Bunge referred F&C to a set of documents already produced by Bunge as Bunge10002817 through Bunge10002840, which appears to be a spreadsheet of Bunge's defense costs through November 20, 2007.

---

[27] *See DIRECTV, Inc. v. Puccinelli*, 224 F.R.D. 677, 680 (D.Kan. 2004) (*citing Zapata v. IBP, Inc.*, No. Civ. A. 93-2366-EEO, 1997 WL 50474 (D.Kan. Feb. 4, 1997)).

[28] *Zapata v. IBP, Inc.*, No. Civ. A. 93-2366-EEO, 1997 WL 50474, at *1 (D.Kan. Feb. 4, 1997); *accord Sunbird Air Services, Inc. v. Beech Aircraft Corp.*, No. Civ. A. 89-2181-V, 1992 WL 739505 (D.Kan. Sept. 4, 1992) (requiring the answering party to affirmatively state its election to produce business records in compliance with Fed.R.Civ.P. 33).

Bunge's answer to Interrogatory No. 2 fails to state that Bunge is exercising its option to produce business records under Fed.R.Civ.P. 33(d) and Bunge has not attached any documents to its answers to the 12/28/07 Interrogatories.  In addition, Bunge's response to Interrogatory No. 2 fails to meet the substance of the interrogatory.  The spreadsheet referred to by Bunge appears to be a recent total of Bunge's total defense costs. The spreadsheet, however, fails to identify the specific amounts that Bunge has not and does not expect to recover from St. Paul Travelers. While Bunge's response to Interrogatory No. 2 asserts that Bunge does not yet have a basis for determining the exact amount it <u>will</u> ultimately recover from St. Paul Travelers, the interrogatory asks Bunge to identify the amount it <u>has not</u> and does not expect to recover from St. Paul Travelers.  Thus, the Court orders Bunge to amend its answer to Interrogatory No. 2 of the 12/28/07 Interrogatories.

Similarly, Bunge's answer to Interrogatory No. 3 does not affirmatively state that Bunge is exercising its option to provide business records under Fed.R.Civ.P. 33(d) and Bunge has not attached any documents to its answers to the 12/28/07 Interrogatories.  While Bunge's response states that Bunge has paid all of its defense costs, it goes on to state that "[F&C] has not repaid any of such costs, so they <u>all</u> 'remain unpaid as a result of [F&C's] refuse to pay.'"[29] The exact amount and nature of "all" of Bunge's defense costs is unclear from its response to this interrogatory.  Therefore, the Court orders Bunge to amend its answer to Interrogatory No. 3 of the 12/28/07 Interrogatories.

**C.      1/10/08 Document Requests**

---

[29] Bunge North America, Inc.'s Objections and Responses to the Continental Insurance Company's Interrogatories and Request for Documents (doc. 635-18), ¶ 3 (emphasis added).

F&C requests that this Court compel Bunge to supplement its responses to the 1/10/08 Document Requests, and to specify precisely what Bunge received from Marsh and how that universe of documents relates to the universe of documents Bunge previously represented it received from Marsh.   F&C's single request in the 1/10/08 Document Requests asks Bunge to produce, to the extent not previously produced, all documents Bunge obtained from Marsh. Bunge responded to this request by affirmatively representing that the documents responsive to the request had already been produced and identified the specific bates range of the responsive documents.

After Bunge responded to the 1/10/08 Document Requests, F&C learned of certain "Aetna Documents" that a 30(b)(c) witness for Marsh believed were provided to Bunge.  F&C claims that the documents identified by Bunge as responsive to the 1/10/08 Documents Requests do not contain these "Aetna Documents" and, therefore, Bunge must supplement its responses to provided these documents.  In addition, F&C claims that the documents provided by Bunge to F&C were all contained on a single compact disk.  F&C learned from counsel for Marsh that Marsh provided documents to Bunge on two compact disks.  Consequently, F&C requested that Bunge supplement its responses to the 1/10/08 Documents Requests to specify whether the contents of the two compact disks from Marsh were contained on the single compact disk provided by Bunge to F&C or were part of the universe of documents that were previously produced by Marsh.

In response to questions from counsel for F&C regarding Bunge's answer to the 1/10/08 Document Requests, counsel for Bunge informed counsel for F&C on more than one occasion that to the best of Bunge's knowledge the "Aetna Documents" are part of the universe of

documents already produced by Marsh.  In addition, counsel for Bunge informed counsel for F&C that to the best of Bunge's knowledge the compact disks that Marsh produced to Bunge contain all or portions of the universe of documents already provided by Marsh.

The Court finds that Bunge's response to the 1/10/08 Document Requests is adequate and accurate on its face.  The discussions between counsel for the parties further illustrate that Bunge has fully and completely responded to the request.  Thus, the Court denies F&C's motion to compel Bunge to supplement its responses to the 1/10/08 Document Requests.

## III. FEES AND COSTS

F&C requests that the Court award its fees and costs together with sanctions pursuant to Fed.R.Civ.P. 36 and 37.  Bunge, on the other hand, asks that the Court deny F&C's request for fees and costs and order that F&C be required to pay Bunge's fees and costs for responding to the Motion to Compel pursuant to Fed.R.Civ.P. 37.

Fed.R.Civ.P. 37 provides in pertinent part that if the motion to compel discovery is granted in part and denied in part, as is the case here, the court may "apportion the reasonable expenses for the motion."[30]  Accordingly, the Court orders each party to bear its own fees and costs related to the Motion to Compel.

**IT IS SO ORDERED.**

Dated in Kansas City, Kansas on this 28th day of May 2008.

s/ David J. Waxse
David J. Waxse
U.S. Magistrate Judge

cc:    All counsel and *pro se* parties

---

[30] Fed.R.Civ.P.37(a)(5)(C) (2008).